**TRUSTEES OF THE SCREEN ACTORS GUILD–PRODUCERS PENSION AND HEALTH PLANS, Plaintiffs,**

v.

**Gary S. MATERNA, Defendant.**

**No. CV 98–3169 RAP (AJWX).**

United States District Court,
C.D. California.

Sept. 17, 1999.

Peter S. Dickinson, Geffner & Bush, Burbank, CA, for plaintiff.

In pro per, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PAEZ, District Judge.

## I.

### *Introduction*

Defendant Gary Materna, proceeding in pro se, was an employee of Triangle Enterprises ("Triangle") and received benefits as the result of contributions made by Triangle to the Screen Actors Guild–Producers Pension and Health Plans ("Plans"). Materna also received other additional benefits as the result of self-pay contributions. Plaintiffs, the Trustees of the Plans, after auditing Triangle's records, concluded that Materna was ineligible to participate in the Plans from April 1, 1992 to March 31, 1995. They also determined that he was ineligible for benefits received as a result of self-pay contributions from April 1, 1995 through April 30, 1996. The Trustees notified defendant of this ineligibility on December 16, 1996, and gave him 60 days to appeal this decision. Defendant appealed, but the Trustees declined to change the decision.

The Trustees of the Plans filed this action seeking to recover $14,891.21, the excess of medical benefit payments received by defendant over the amount of contributions made. When defendant failed to respond, the plaintiffs obtained a default against him. However, the Court vacated that default and allowed defendant to conduct discovery in order to defend this action. In addition, defendant has filed a cross-claim seeking penalties for non-compliance with bona fide requests for information under 29 U.S.C. § 1132(c)(1). Pending before the Court is plaintiffs' motion for summary judgment and plaintiffs' motion to strike defendant's counterclaim.

For the reasons given below, defendant's motion for summary judgment and motion to strike are both **granted.**

## II.

### Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 106 S.Ct. 2505. As the Supreme Court explained in *Matsushita,*

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed.R.Civ.P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

Summary judgment is not treated as "a disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### B. Application

Plaintiffs claim that they have thoroughly investigated defendant's eligibility for the benefits he received and that, based upon the information available, defendant simply was not eligible to participate in the Plan. Defendant, in his Statement of Genu-

ine Issues, responds that: (1) pension plan fiduciaries may not bring federal actions to recover damages based on a breach of contractual obligations under a pension plan; (2) plaintiffs have failed to produce documents at the core of defendant's defense and cross-claim; and (3) the Plans arbitrarily and erroneously denied defendant coverage. Finally, defendant asserts plaintiffs' claims are time-barred.

### 1. Trustees' Action for Recovery of Benefits

Defendant argues that pension plan fiduciaries may not bring an action under 29 U.S.C. § 1132 to recover benefits wrongfully paid out.

29 U.S.C. section 1132(a)(1) provides for civil actions on the part of participants or beneficiaries to recover benefits due. 29 U.S.C. § 1132(a)(1)(B) (1999). This provision does not discuss fiduciaries' rights. However, section 1132(a) also provides that fiduciaries may bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3) (1999). Plaintiffs bring this action to recover benefits paid to defendant under section 1132(a)(3)(B).

Courts are divided on the question of whether this provision for equitable relief properly applies to situations like the one before the Court today. For example, in *NYSA–ILA GAI Fund v. Poggi*, 617 F.Supp. 847 (S.D.N.Y.1985), *amended and reaffirmed*, 624 F.Supp. 443 (S.D.N.Y. 1985), the district court explicitly found that section 1132(a)(3)(B) did not confer a right upon fiduciaries to recover benefits paid to a beneficiary: "while a pension plan beneficiary clearly does have the right to bring an action in federal court to recover benefits past due, there is no symmetrical grant of jurisdiction over actions by

pension plans to recover benefits wrongfully paid out." *Poggi*, 617 F.Supp. at 849.

■ However, the Court is not bound by the district court's holding in *Poggi*. Furthermore, district courts in the Ninth Circuit have held otherwise. In *Northern California Food Employers & Retail Clerks Unions Benefit Fund v. Dianda's Italian–American Pastry Co., Inc.*, 645 F.Supp. 160 (N.D.Cal.1986), the district court specifically rejected the Southern District of New York's holding in *Poggi*, observing that section 1132(a)(3)(B) allows for redress of plan violations, and "[s]uch 'redress' includes compensating the plan for money lost due to such violations." 645 F.Supp. at 162. The court allowed the fund and its administrator to assert an action to recoup benefits improperly paid out as a result of an employer's alleged inaccurate reporting of employee's hours.

The factual situation presented here is not identical to the one addressed by the district court in *Dianda*, insofar as here the trustees seek to recover the benefits directly from the recipient, rather than from the employer. However, the Eleventh Circuit, in considering the question of which parties may be subject to suit under section 1132(a)(3) recently observed,

> We, like the court in *Dianda's*, find in the language of § 1132(a)(3) no limitation on the types of defendants properly subject to an enforcement suit by a fiduciary ... nor do we find language limiting suits to enforce the terms of the plan to actions 'to ensure continuing compliance,' as suggested by the court in *Poggi*.

*Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1547 (11th Cir.1990). The Eleventh Circuit accordingly found that the district court had subject matter jurisdiction over the dispute, where the claims administrator and the sponsor of the ERISA plan sought to recover moneys paid out to a physician who had submitted false claims to the plan.

■ The language of section 1132 indicates that fiduciaries may obtain appropriate equitable relief to redress violations of the terms of a benefit plan. The Court follows the Eleventh Circuit's guidance in *Weitz* and construes section 1132(a)(3) broadly. Here, plaintiffs seek to recover benefits wrongfully paid out. Such an action rightfully comes under section 1132(a)(3).[1]

## 2. Statute of Limitations

■ The applicable statute of limitations to enforce an ERISA plan under section 1132 is four years.[2] *Northern California Retail Clerks Unions & Food Employers Joint Pension Trust v. Jumbo Markets,* 906 F.2d 1371, 1372 (9th Cir.1990) (applying California Code of Civil Procedure § 337 limitations period to action to recover underpaid contributions by employer). However, the statute does not begin to run until the party bringing suit knows or has reason to know of the injury. *Id.* at 1373. This period may begin when trustees commence an audit of employer practices, if this is the first time that the trustees have reason to know of the plan violation(s). Or a trustee exercising its duty should have been alerted to the problem at an earlier time, the statute of limitations begins to run at the time of imputed knowledge. *Id.* (district court must examine facts to determine when trustees reasonably should have known of past substantial error).

Here, until plaintiffs began the audit of Mr. Materna and Triangle Enterprises in November of 1995, they could not have known whether Mr. Materna was an eligible participant or not. Since plaintiffs filed their complaint on April 24, 1998, they acted well within the four-year statute of limitations period. Plaintiffs action was timely.

## 3. Standard of Review for Denial of Benefits

A denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Ninth Circuit has observed that the holding of *Firestone* indicates that "the default is that the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (1999).

■ Here, as explained above, the action is not one for a recovery of benefits under section 1132(a)(1), but rather an action under 1132(a)(3)(B). However, the Court believes that the same standard of review should apply. Courts have applied the abuse of discretion standard of review to determinations of benefits; the subject of court review in this action is likewise a determination of benefits eligibility. Thus, the Court must review plaintiffs' decision under a de novo standard unless the plan explicitly confers discretionary authority to

1. The Fourth Circuit, in *Provident Life & Accident Insurance Co. v. Waller,* 906 F.2d 985 (4th Cir.1990), observed that an action for unjust enrichment might be brought by a plan administrator seeking to recover monies advanced to a participant. The court found that such an action arose under *federal common law,* and this was the proper basis for federal court jurisdiction. However, there plaintiff had only brought an action under section 1132(a)(1)(B). The Fourth Circuit thus did not address the possibility of a suit under 1132(a)(3), but indicated that plaintiff could probably have brought such a claim. *Waller,* 906 F.2d at 988 n. 5. Since plaintiffs here have explicitly stated a claim under section 1132(a)(3), the Court need not address whether a federal cause of action under federal common law is present.

2. Defendant mistakenly points to provisions in the Plan language that refer to claims against producers for contributions on behalf of performers. (Def.'s Supp.Decl. at 6.) That time period does not apply to this action because this is an action to enforce the terms of the plans against a *beneficiary.*

determine eligibility for benefits or to construe the terms of the plan.

The Screen Actors Guild–Producers Health Plan states that the Health Plan Trustees and Benefits Committee are empowered to construe the meaning of the provisions of the Health Plan, and to determine participants' eligibility.[3] This language clearly vests the Plan Trustees with discretion to determine participants' eligibility for benefits. Therefore the Trustees' decisions should be reviewed for abuse of discretion only.

### 4. Abuse of Discretion

■ An abuse of discretion occurs where the trustees of the plan "render decisions without any explanation, or construe provisions of the plan in a way that clearly conflicts with the plain language of the plan." *Id.* (citing *Johnson v. Trustees of the Western Conf. of Teamsters Pension Trust Fund*, 879 F.2d 651, 654 (9th Cir. 1989)).

The Summary Plan Description of the Screen Actors Guild–Producers Health Plan states that:

> Covered Earnings are those earnings generated in connection with your work as an actor in theatrical motion picture, television motion pictures, television commercials, industrial or educational motion pictures and interactive media projects. These services must be performed for producers who have signed Collective Bargaining Agreements with the Screen Actors Guild.

(Clark Decl.Ex. E at 1.)

The Plan auditors reviewed: (1) Industrial and Educational Reporting Forms submitted by Triangle Enterprises purporting to document payments to Mr. Materna for covered services (Clark Decl.Ex. B.); (2) photocopies of checks issued to Mr. Materna, (Clark Decl.Exs. F, H) (3) tax returns; and (4) certification from the Screen Actors Guild that Materna was indeed a signator to the relevant Screen Actors Guild agreements. (Clark Decl.Ex. A.) Although the auditors requested that defendant submit video or audio documentation of all projects produced by Triangle Enterprises during the relevant time period, (Clark Decl.Ex. D), defendant submitted no such documentation.

The Plans found these records insufficient to verify that Materna was eligible for the coverage he received. The Plans determined that the documents did not show: (1) that defendant participated in covered work; and (2) that defendant was paid for his services. Basically, defendant represented that his contract with Triangle was "pay or play" and no work was required, nor was any video or audio product available. (Clark Decl.Ex. H.)

■ Based upon the evidence before it, the Court cannot conclude that the plaintiffs abused their discretion in determining that defendant did not perform covered work as defined in the Plans. First, defendant has not demonstrated that any work was performed. Rather, defendant acknowledges that he was paid to have his services available, but did not perform covered work. Nothing in the Plan indicates that such "holding contracts" are to be construed as payments for covered work. In addition, given that the payments under such contracts were signed by defendant's wife on behalf of Triangle, and in some

---

**3.** The Health Plan Trustees and the Benefits Committee are authorized and empowered to construe the meaning of any doubtful or ambiguous provisions of the Health Plan, and any construction thereof adopted by the Health Plan Trustees or the Benefits Committee in good faith shall be binding upon SAG, the Producers, the Actors and all beneficiaries.

The Health Plan Trustees and the Benefits Committee are authorized and empowered to decide on a participant's entitlement to or application for benefits under the Health Plan, and any such decision of the Health Plan Trustees or the Benefits Committee shall be final and binding on all affected parties.
(Clark Decl.Ex. E at 49 (Screen Actor's Guild–Producers Health Plan).)

instances were only cashed after plaintiffs commenced their inquiries, and given that defendant Materna appears to have been Triangle's sole employee, it appears that was not receiving compensation for services rendered.

Because the Court determines that plaintiffs did not abuse their discretion in finding defendant ineligible to be a beneficiary under the Plans, either under the Group Policy or as a self-paying contributor, plaintiffs' motion for summary judgment is **granted.**

Even assuming that the Court should instead apply a de novo standard of review, after considering all of the evidence before it, the Court finds that defendant has raised no triable issues of material fact. In addition, no reasonable trier of fact could conclude that defendant was eligible for the benefits paid to him and that the Plans wrongfully determined that he was not eligible. Therefore, under either a de novo or an abuse of discretion standard of review, the Court determines that plaintiffs decision was proper.

### C. Defendant's Counterclaim

Defendant claims that plaintiffs should be subject to a $100 per day penalty under 29 U.S.C. § 1132(c). Section 1132(c) provides that an administrator is required to meet the requirements of section 1166 and section 1021(e)(1), as well as any informational requests by a participant or beneficiary that are mandated under the statute. 29 U.S.C. § 1132(c) (1999). This includes summary plan descriptions, modifications to a plan, terminal and supplementary reports, notice of transfer of excess pension assets to health benefits accounts, etc. 29 U.S.C. § 1021 (1999).

The record indicates that plaintiffs have sent defendant copies of all correspondence with Triangle, as well as copies of retained annual earning summaries of defendant, eligibility and termination notifications, and standard form notices. Plaintiffs also indicate that they have provided defendant with Summary Plan Descrip-

tions for the years 1992 through 1994. (Clark Decl. ¶ 18.) Finally, defendant has not pointed to any specific information that plaintiffs have failed to provide that they are required to provide by law. Accordingly, defendant has not shown a justifiable basis for penalizing plaintiffs under section 1132(c). Plaintiffs' motion to strike defendant's cross-claim is **granted.**

### D. Plaintiffs' Costs and Attorneys' Fees

#### 1. Standard for Awarding Attorneys' Fees and Costs in ERISA Actions

■ Finally, plaintiffs seek to recover their attorneys' fees and costs. ERISA provides that in an action "by a participant, beneficiary, or fiduciary, the court in its discretion may allow reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g). Courts have applied the *Hummell* factors to both awards of fees and costs:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980) (citation omitted). *See also Landwehr v. DuPree,* 72 F.3d 726, 739 (9th Cir.1995). "No one of the *Hummell* factors, however, is necessarily decisive, and some may not be pertinent in a given case." *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 590 (9th Cir. 1984).

Although the Court cannot clearly say here that defendant acted in bad faith, his defense of this case in many respects was groundless. Thus, the merits of the case tip heavily in plaintiff's favor.

The only other relevant factor here is defendant's limited means. Although the Court is aware that defendant may be of limited financial resources and thus may be unable to pay plaintiffs' attorneys' fees, the Court finds that the *Hummell* factors, taken as a whole, militate in favor of an award to plaintiffs. Plaintiffs accordingly is entitled to an award of reasonable attorneys' fees and costs.

### 2. Calculation of Amount of Fees

■ Attorneys' fees under section 1132(g)(1) of ERISA are calculated using a hybrid lodestar/multiplier approach. *McElwaine v. U.S. West Inc.*, 176 F.3d 1167, 1173 (9th Cir.1999). This method entails multiplying the number of hours reasonably expended by the attorneys by a reasonable hourly rate, raising or lowering the lodestar according to certain factors.[4]

The Court has evaluated the amount requested by plaintiffs. The hourly attorney rates were, at a maximum $145/hour (later increased to $175/hour). Given the expertise of counsel in this case, the Court believes that this rate is reasonable. And having reviewed the detailed time records and other documents submitted by counsel supporting their request, the Court finds that the hours expended to prosecute this action were also reasonable. (Dickinson Decl.Ex. A.) Accordingly, plaintiffs request under 29 U.S.C. § 1132(g) for reasonable attorneys' fees in the amount of $15,110.00 and reasonable out of pocket costs in the amount of $2,110.36 is **granted.** Plaintiffs shall also recover their costs of suit ($150.00) as allowed by Local Rule 16 and Fed.R.Civ.P. 54(d).

### III.

### Conclusion

For the reasons given above, plaintiffs' motion for summary judgment and to strike are **granted.** Judgment shall be entered forthwith awarding plaintiffs $14,-891.21. Plaintiffs shall also recover attorneys' fees in the amount of $15,110.00 and their out of pocket costs in the amount of $2,110.36. Plaintiffs shall also recover their costs of suit.

**IT IS SO ORDERED.**

---

4. These factors include, among others, the time and labor required; the novelty and difficulty of the questions involved; the skill required to perform the necessary legal service properly; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir.1990) (applying factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975) to ERISA attorneys' fees).