**TRUSTEES ON BEHALF OF THE TEAMSTERS BENEFIT TRUST, Plaintiff,**

v.

**DOCTORS MEDICAL CENTER OF MODESTO, INC., Defendant.**

No. C–03–2538 EMC.

United States District Court, N.D. California.

Sept. 26, 2003.

Matthew Morbello, Beeson Tayler & Bodine, APC, Sacramento, CA, for Plaintiff.

Carrie Sue McLain, Ralph G. Helton, Ralph Helton & Associates, Long Beach, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Docket No. 5)

CHEN, United States Magistrate Judge.

A hearing was conducted on Defendant's motion to dismiss on August 27, 2003. Matthew Morbello of Beeson, Taylor & Bodine appeared on behalf of Plaintiff and Carrie McLain of Ralph Helton & Associates appeared on behalf of Defendant. Based on the Court's review of the record in this case, as well as the moving papers, accompanying declarations and oral argument, and good cause appearing therefor, the Court GRANTS Defendant's motion to dismiss.

### I. FACTUAL BACKGROUND

Plaintiff Trustees on Behalf of the Teamsters Benefit Trust ("Plaintiff Fund") filed this ERISA equitable restitution action against Defendant Doctor's Medical Center of Modesto Inc. ("DMC") for $63,717.05 in overpayment for the five-day inpatient treatment of a participant covered by the Plaintiff Fund during August 2001. DMC is within the Interplan network of health care providers, and Plaintiff Fund's participants who obtain medical services from Interplan providers are entitled to discounted rates established between Interplan and DMC. Complaint ¶ 5. DMC allegedly billed Plaintiff $130,115.40 for "trauma" services performed on Glen Nolan, and was paid $117,103.86, which reflected the 10% discount for trauma services provided for by the contract rate between the parties. Complaint ¶¶ 6–11.

Plaintiff alleges that its auditors later discovered that the Trust had been overbilled for (1) a charge of $7,952.04 for an implant when it should have been billed at the contract rate of the cost of the implant plus 5%; and (2) the patient was billed for 5 days at the trauma rate when actually Mr. Nolan was treated in the trauma center on the first day, meaning that the subsequent four days should have been billed at the lower inpatient rate of $1,177.00 per day. Complaint ¶¶ 13–14. Plaintiff's requests for a refund went unheeded, and the Trustees filed this action in the Northern District for restitution of $63,717.05 plus the amount overbilled from the implant, which Plaintiff has not ascertained. *Id.*

Both parties consented to proceed before a magistrate judge in July 2003.

### II. LEGAL ANALYSIS

#### A. Standard for Dismissal under Rule 12(b)(1)

■ Rule 12(b)(1) allows this Court to dismiss a claim for lack of jurisdiction. If a federal court dismisses under Rule 12(b)(1) for lack of subject matter jurisdiction, then there can be no supplemental jurisdiction over any potential state law claims because "dismissal postulates that there was never a valid federal claim. Exercise of jurisdiction ...would therefore violate Article III of the Constitution..."

*Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir.2001) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

■ In a 12(b)(1) motion, the factual allegations in the complaint are assumed to be true. *Miranda v. Reno*, 238 F.3d 1156, 1157 n. 1 (9th Cir.2001); *Orsay v. United States Dept. of Justice*, 289 F.3d 1125, 1127 (9th Cir.2002).

## B. The Substance of Plaintiff's Remedy is Legal Rather than Equitable

■ Plaintiff's complaint states that Plaintiff Fund is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002 and 1132(d), and that this Court has jurisdiction under § 1132(a)(3). Complaint ¶ 3.

Section 1132(a)(3) states that a civil action may be brought:

> [B]y a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

§ 1132(a)(3) (emphasis added).[1]

■ Defendant's core argument is that this Court lacks subject matter jurisdiction over Plaintiff's suit because this restitution action under § 1132(a)(3)(B) seeks essentially legal rather than equitable relief. Plaintiff argues this action is indeed equitable restitution because, rather than trying to impose personal liability on DMC,

---

1. DMC argues that an ERISA plan does not have standing to sue under § 1132(a)(3). However, the plain language of § 1132(a)(3) states that an ERISA action can be filed by a fiduciary like Plaintiff Fund for "other appropriate equitable relief" to enforce provisions of a plan. A fiduciary for purposes of ERISA includes any person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control or respecting management or disposition of its assets..." 29 U.S.C. § 1002(21)(A). Therefore, Plaintiff Fund has standing.

Defendant also argues that it "is a stranger to the ERISA plan and owes [Plaintiff] no duty under ERISA." Motion to Dismiss, at 4. This argument is unavailing. Case law makes clear that DMC is a proper defendant. For example, in *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), the court held that § 502(a)(3) allows suits against non-fiduciary defendants:

> But § 502(a)(3) admits of no limit (aside from the "appropriate equitable relief" caveat, which we address *infra*) on the universe of possible defendants. Indeed, § 502(a)(3) makes no mention at all of which parties may be proper defendants—the focus, instead, is on redressing the "*act or practice* which violates any

provision of [ERISA Title I]." 29 U.S.C. § 1132(a)(3)(emphasis added). Other provisions of ERISA, by contrast, do expressly address who may be a defendant (citations omitted)....In light of Congress' precision in these respects, we would ordinarily assume that Congress' failure to specify proper defendants in § 502(a)(3) was intentional.

530 U.S. at 246–47.

A party that provides services to a pension fund is a "party in interest" for purposes of ERISA. *Nieto v. Ecker*, 845 F.2d 868, 873 (9th Cir.1988). In *Nieto*, for example, the Ninth Circuit ruled that plan trustees could bring suit under § 502(a)(3) for equitable relief against non-fiduciary lawyers who had been paid for services they did not render. 845 F.2d at 873–74. *See also Landwehr v. DuPree*, 72 F.3d 726, 733–34 (9th Cir.1995) (party in interest may be sued for transfer of plan assets); *Concha v. London*, 62 F.3d 1493, 1504 (9th Cir.1995) (plan could seek restitution against lawyers who engaged in taking plan assets for personal use); *Steen v. John Hancock Mutual Life Ins.*, 106 F.3d 904, 917–18 (9th Cir.1997) (party in interest that violates 29 U.S.C. § 1106(a) subject to liability for engaging in prohibited transactions as defined by 29 U.S.C. § 1106, for which the trustees can seek equitable relief under 29 U.S.C. § 1132(a)(3)).

Plaintiff seeks the return of money wrongfully transferred to and still in the possession of DMC. Defendant responds that despite Plaintiff's attempt to label it otherwise, at bottom the present action seeks money damages for a contractual breach, which the Ninth Circuit has not treated as equitable in nature. Defendant further argues that this matter should be filed as a state court breach of contract action arising out of a third-party beneficiary's interpretation of a provider discount agreement.

Both parties rely heavily on *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In *Great–West,* the Court held that "appropriate equitable relief" did not authorize an employee benefit plans to bring an action for specific performance of a reimbursement provision of a plan because that was essentially a *legal* rather than *equitable* form of relief. 534 U.S. at 219–21, 122 S.Ct. 708. The Court rejected the argument that § 1132(a)(3) authorizes all relief consistent with ERISA's purpose, interpreting the statute as providing fiduciaries solely with equitable relief. *Id.* at 219 n. 5, 122 S.Ct. 708. That the plaintiff nominally seeks "restitution" is not dispositive. The Court explicitly distinguished between equitable restitution and legal restitution, finding that " 'restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for the plaintiff's claim' and the nature of the underlying remedies sought." *Id.* at 213, 122 S.Ct. 708 (quoting *Reich v. Continental Casualty Co.,* 33 F.3d 754, 756 (7th Cir.1994)).

Thus, the key question posed by this case is whether the underlying remedy sought by Plaintiff should be classified as legal or equitable. For the reasons stated below, the Court concludes it lacks subject matter jurisdiction because Plaintiff's remedy is essentially legal in nature. In *Great–West* the Court explained:

> In cases in which the plaintiff 'could *not* assert title to right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him,' the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit... In such cases, the plaintiff's claim was considered legal because he sought 'to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money.' ...Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

534 U.S. at 214, 122 S.Ct. 708 (quoting the Restatement of Restitution § 160 (1936) (emphasis in original)).

Moreover, in *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), in which a class of former employees participating in a pension plan brought suit for equitable relief against the plan's actuary after the plan became insufficiently funded and was terminated, the Supreme Court affirmed dismissal. *Mertens* held that ERISA does not authorize suits for money damages against non-fiduciaries who knowingly participate in a fiduciary's breach of a fiduciary duty. The Court looked beyond the label plaintiffs placed on their complaint, finding, "Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief." 508 U.S. at 255, 113 S.Ct. 2063 (emphasis in original).

Thus, under *Great–West* and *Mertens,* this Court must look beyond the "equitable restitution" label that Plaintiff places on her claim, and must determine if that label accurately captures the substance of the remedy sought. *FMC Medical Plan v. Owens,* 122 F.3d 1258, 1262 (9th Cir.1997) ("The substance of the remedy sought by FMC is money damages for Owen's alleged breach of the Plans, which are contracts....FMC attempts to 'dance around the word;' however what it seeks is not a form of equitable relief recognized by the narrow construction of section 1132(a)(3) as required by *Mertens.*"); *see also Westaff (USA) Inc. v. Arce,* 298 F.3d 1164 (9th Cir.2002) ("[W]e look to the 'substance of the remedy sought ... rather than the label placed on that remedy.").

In *Owens,* a medical plan paid defendant, injured in an auto accident, $50,000 in benefits under a plan that required the beneficiary to reimburse the plan if funds were collected from another source. 122 F.3d at 1259. After defendant won a judgment against another driver and then would not reimburse the plan, the plan sued for "equitable reimbursement" and the district court ruled that it had subject matter jurisdiction pursuant to § 1132(a)(3). *Id.* The Ninth Circuit reversed, ruling that plaintiff's claim was one of contractual reimbursement rather than subrogation, which was not covered by "other equitable relief" under § 1132(a)(3). *Id.* at 1260–62. The Ninth Circuit reaffirmed *Owens* under similar facts in *Reynolds Metals Co. v. Ellis,* 202 F.3d 1246 (9th Cir.2000), which involved an action to recover plan benefits after an injured employee obtained a third-party accident settlement. *See also Bast v. Prudential Ins. Co. of America,* 150 F.3d 1003, 1010 (9th Cir.1998) (plan participant who later died of breast cancer was denied coverage for a bone marrow transplant procedure, court held that her survivors were not entitled to

restitution because this would be equivalent to money damages).

In the instant case, the core dispute is essentially over differing interpretations of the Interplan–Plaintiff Fund contract. Plaintiff contends that trauma services (and contract rates therefor) are limited to services provided in the trauma room of the medical clinic. *See* Complaint, ¶ 12 ("Plaintiff Fund's auditor discovered that DMC had been incorrectly compensated at the trauma rate for all services provided Nolan during his inpatient stay."). In contrast, Defendant interprets trauma services to include medical care that followed Mr. Nolan during the duration of his stay at DMC. *See* Defendant's Reply, at 2 ("The trauma service at Modesto is a comprehensive service or program. It is not, as Plaintiff suggests, a unit or a place that patients move in and out of. All patients assigned to trauma services remain patients of the trauma service throughout their hospital stay ..."). In short, Plaintiff is "danc[ing] around the word" by labeling its complaint as equitable restitution for a mistaken overpayment, when what it "in fact seek[s] is nothing other than compensatory *damages*" stemming from a contract dispute. *Mertens,* 508 U.S. at 255, 113 S.Ct. 2063.

Plaintiff also argues that federal courts routinely allow trustees of ERISA plans to bring equitable restitution actions against participants to recover mistakenly overpaid benefits. Plaintiff's Opposition, at 6–7 (citing *Central States, Southeast, Southwest Areas Health and Welfare Fund v. Neurobehavioral Associates,* 53 F.3d 172 (7th Cir.1995); *Lumenite Control Technology, Inc. v. Jarvis,* 252 F.Supp.2d 700 (N.D.Ill.2003); *Blue Cross & Blue Shield of Alabama v. Weitz,* 913 F.2d 1544, 1547 (11th Cir.1990); *Trustees of Screen Actors Guild–Producers Pension and Health Plans v. Materna,* 70 F.Supp.2d 1082 (C.D.Cal.1999)). *See* Federal Procedure,

Lawyer's Edition § 61:372 (updated 2003) ("[M]ost courts which have considered the issue have allowed plan fiduciaries to maintain an ERISA action to recover a mistaken overpayment.").

However, Plaintiff's reliance on cases involving mistaken overpayment, particularly *Central States,* is misplaced. First, it appears that the Ninth Circuit has construed the equitable jurisdiction of the federal courts under ERISA narrowly. In cases involving overpayment, the Ninth Circuit has thus far found unjust enrichment/restitution claims only where there is fraud or wrongdoing. *See Owens,* 122 F.3d at 1261 ("Restitution is referred to in *Mertens* as the return of 'ill-gotten' assets or profits taken from a plan... Owens did not obtain FMC's funds by any fraud or wrong-doing"); *Ellis,* 202 F.3d at 1249 (under *Owens* "restitution requires the showing of fraud or wrong-doing."); *Bast,* 150 F.3d at 1011 ("This amount of money is not an 'ill-gotten profit' ... While Prudential may have been unjustly enriched, it did not take money from the Plan.") (citation omitted); *BankAmerica Pension Plan,* 2001 WL 263290 at *12 ("The Ninth Circuit has held that the equitable remedy of restitution is only available where the defendant obtained the funds through 'fraud or wrong-doing.") (citing *Owens,* 122 F.3d at 1261). There is no clear precedent in this Circuit to permit such suits where fraud or wrongdoing is not alleged.

To be sure, the Ninth Circuit has not clearly precluded suits for equitable restitution under ERISA in cases where mistaken payments is not based on fraud or intentional wrongdoing but simply on mistake. *See Owens,* 122 F.3d at 1261 ("The Court explained, *by way of example,* that restitution of 'ill-gotten' plan assets or profits is a limited way to get monetary relief under this section.") (emphasis add-

ed); (*Mertens,* 508 U.S. at 260, 113 S.Ct. 2063) ("For even it its more limited sense, the 'equitable relief' awardable under 502(a)(5) includes restitution of ill-gotten plan assets or profits..."); Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d, illus. 6 (Discussion Draft 2000) ("A owes B $100 on account. By mistake, A pays B $200. There is no contract between A and B establishing a duty to refund a payment not due. B's obligation to refund the overpayment is a liability in restitution."); *U.S. v. Pegg,* 782 F.2d 1498, 1500 (9th Cir.1986) ("Where the owner of property transfers it as a result of mistake of such a character that he is entitled to restitution, the transferee holds the property upon a constructive trust for him.") (quoting the Restatement of Restitution § 163).

But in any event, even if the Ninth Circuit were to recognize an equitable claim for mistaken overpayment as the Seventh Circuit has in *Central States,* no such claim would lie here. In *Central States* the trustee of a benefits plan sought to recover a mistaken overpayment for medical services provided to one of its members. The Seventh Circuit ruled that the district court erred in dismissing the case for lack of subject matter jurisdiction. The defendant in that case submitted a bill for $100.00, but because of a clerical error the plaintiff sent payment of $10,000.00, and defendant refused to refund the $9,900.00 in excess payment. *Id.* at 173. Defendant had no contract or other legal claim to the overpaid amount. The overpayment was due to a clerical error. In the case at bar, by contrast, Plaintiff's alleged overpayment for medical services in this case was not simply the result of a clerical mistake, but arises from a dispute over the parties' interpretation of the contract.[2]

---

**2.** Cases in which lower courts have permitted suits to recover overpayments, such as *Mater-* *na,* 70 F.Supp.2d 1082, are not persuasive.

Even under the broader view of equitable restitution to remedy unjust enrichment, a claim of unjust enrichment lies only where the defendant has no legal claim to the overpayment. *See* BLACK'S LAW DICTIONARY 1536 (7th ed.1999) (unjust enrichment claim lies where benefit obtained by defendant is "not legally justified"). In the case at bar, Defendant does have a claim to legal entitlement to the alleged overcharges by virtue of the contract at issue. This underscores the point that this suit is an action at law over contract interpretation, not an equitable claim of unjust enrichment.

Plaintiff states that if the Court would otherwise be inclined to grant the motion to dismiss, then the Court should allow Plaintiff leave to amend to demand a constructive trust. Plaintiff's Opposition, at 7 n. 1. But the proposed amendment begs the question at issue. The request for the relief of a constructive trust does not obviate the question whether the action is one at law for breach of contract damages or

In *Materna,* an employee received medical benefits and the plan later discovered he was ineligible for these benefits; the trustees of the plan sought reimbursement of the wrongly paid benefits and the court granted summary judgment in their favor. *Id.* at 1085–86. *Materna* involved a pro se defendant who apparently was unable to mount a full-throated defense to a summary judgment motion; the decision is conspicuously silent regarding *Owens, Ellis,* and other recent Ninth Circuit cases which appear to restrict the scope of equitable relief under ERISA. *Materna* relied upon *Northern Cal. Food Employers & Retail Clerks Unions Benefit Fund v. Dianda's Italian–American Pastry Co., Inc.,* 645 F.Supp. 160 (N.D.Cal.1986). *Dianda's* is factually similar to this case in that there the plaintiff sought to recoup benefits improperly paid when the defendant inaccurately reported the hours worked by an employee. The landscape of equitable relief under ERISA has changed considerably since *Dianda* was decided. Subsequent rulings including *Mertens, Owens,* and *Great–West* make it clear that "appropriate equitable relief" under

inequity for unjust enrichment. *See Bast,* 150 F.3d at 1010; *BankAmerica Pension Plan v. McMath,* 2001 WL 263290 at *12–13 (N.D.Cal.2001).[3]

## C. Plaintiff is not Without State Law Remedies

■ Finally, the Court notes that Plaintiff is not forced to navigate between the Scylla of lack of subject matter jurisdiction in federal court and the Charybdis of ERISA preemption in state court. At the hearing, counsel for Defendant stated on the record that were this action re-filed in state court, Defendant would not assert that ERISA preempts Plaintiff from filing a state court breach of contract action. *See Carpenters Health & Welfare Trust Fund for California v. McCracken,* 83 Cal. App.4th 1365, 1370–72, 100 Cal.Rptr.2d 473 (2000) (because *Owens* and *Ellis* precluded such an action in federal court, § 1132(a)(3) of ERISA did not preempt a state court action for breach of contract for reimbursement of medical benefits);

§ 1132(a)(3) "mark a steadily shrinking field." *Honolulu Joint Apprenticeship,* 332 F.3d at 1237. Even under the broader reading of the law of equitable restitution, absent fraud or wrongdoing, a claim for unjust enrichment does not lie where the defendant has a colorable legal (*e.g.* contract) claim to the payment.

**3.** *Great–West* also poses a second jurisdictional problem for the Plaintiff. In *Great–West,* the Court ruled that equitable restitution is limited to cases where there is an identifiable *res.* 534 U.S. at 213, 122 S.Ct. 708 (citing the Restatement); *see also Honolulu Joint Apprenticeship and Training Committee of United Ass'n Local Union No. 675 v. Foster,* 332 F.3d 1234, 1237–38 (9th Cir.2003). Here, it appears that the funds in question were commingled with other funds. Moreover, Plaintiff does not know the exact amount of the overpayment because it does not know how much was overbilled for the implant. This last fact again suggests that the substance of Plaintiff's claim is breach of contract.

*Ocadian Care Centers, Inc. v. Electrical Workers Health and Welfare Plan for Contra Costa County,* 2001 WL 1081590 (N.D.Cal.2001) (action remanded to state court because ERISA did not preempt plaintiff's state law claims); *Cf. Great–West,* 534 U.S. at 219, 122 S.Ct. 708 ("We express no opinion as to whether … state-law claims such as breach of contract would have been pre-empted by ERISA.").

### III. CONCLUSION

For the reasons state above, the Court GRANTS Defendant's motion to dismiss the complaint because the substance the action is one at law for breach of contract, one over which this Court does not have jurisdiction under 29 U.S.C. § 1132(a)(3).

IT IS SO ORDERED.