The VERIZON EMPLOYEE BEN-
EFITS COMMITTEE, Plain-
tiff/Counter–Defendant,

v.

Michael FRAWLEY, Defendant/Coun-
ter–Plaintiff/Third–Party Plain-
tiff,

v.

Verizon Communications, Inc., Chesa-
peake Directory Sales Co., Verizon
Services Corp., Hewitt Associates,
LLC, and The Ayco Co., L.P., Third–
Party Defendants.

Civil Action No. 3:05–CV–2105–P.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 22, 2008.

Christopher L. Kurzner, Aaron A. Moore, James F. Parker, III, Kurzner PC, Dallas, TX, for Plaintiff/Counter–Defendant/Third–Party Defendants.

Richard A. Smith, Lynn Tillotson Pinker & Cox LLP, Dallas, TX, Maria E. Lisi–Murray, Levene Gouldin & Thompson, Vestal, NY, for Defendant/Counter–Plaintiff/Third–Party Plaintiff.

## ORDER

JORGE A. SOLIS, District Judge.

Now pending before the Court are Motions for Summary Judgment filed by all parties individually—Plaintiff/Counter-Defendant Verizon Employee Benefits Committee (the "Committee" or Plaintiff); Defendant and Counter/Third–Party Plaintiff

Michael Frawley ("Frawley" or Defendant); and Third–Party Defendants Verizon Communications, Inc. ("Verizon"), Chesapeake Directory Sales Company ("Chesapeake"), and Hewitt Associates, LLC ("Hewitt") (collectively, "Third–Party Defendants")—on November 15, 2007.[1] After a thorough review of the pleadings, the briefing, and the applicable law, the Court GRANTS the Defendant Michael Frawley's Motion, and addresses the remaining Motions in a separate order.

## I. Background

Frawley worked for R.H. Donnelley for 15 years between March 10, 1985 and June 30, 2000. Through various mergers and acquisitions, Frawley became an employee of Verizon on July 1, 2000. Frawley participated in Verizon Enterprises Management Pension Plan (the "Plan"). In May of 2003, Frawley accepted an early retirement offer from Verizon that would give him a lump sum benefit of $563, 982.19 for his years of service. Frawley retired from Verizon on July 22, 2003.

Just over two years after his retirement Frawley was contacted by the Committee. The Committee informed Frawley that it had made an error in the calculation of his pension resulting in an overpayment to him. According to the Committee, Frawley was not entitled to pension benefits for his 15 years of service to R.H. Donnelley because R.H. Donnelley had never been a participating employer in a Bell Atlantic pension plan. The Committee demanded the return of alleged overpayments, totaling $239, 872.10. Frawley refused to return the money. Verizon suspended Frawley's medical subsidy in order to recoup the overpayment of Frawley's pension benefits.

1. The Committee and Frawley each filed Responses December 14; and all parties filed

Replies January 7, 2008.

The Committee filed suit to recover the overpayment under 29 U.S.C. § 1132(a)(3). Frawley asserted counterclaims against the Committee, and filed a third-party complaint against his former employer, Verizon; the plan sponsor, Chesapeake; and plan administrators including Verizon Service Corporation,[2] Hewitt, and The Ayco Company, L.P.[3] (collectively, "Third–Party Defendants").

The Committee hired Hewitt to take over responsibility for many of the ministerial duties, including to operate the Verizon Benefits Center. (Comm. Mot. Summ. J. 4.) Among the duties performed by the Verizon Benefits Center was to provide estimates of anticipated retirement benefits. (*Id.;* Comm. Mot. App. 42.) As a service provider, Hewitt exercises no discretion in calculating pension benefits, but acts solely at the discretion of the Committee. (Comm. Mot. Summ. J. 5.)

## II. Analysis

Frawley now moves for summary judgment on his affirmative defense of statute of limitations. Although this issue was addressed in this Court's July 12, 2007 order on the Motion for Judgment on the Pleadings (hereinafter the "Limitations Order"), Frawley argues that a recent Texas Supreme Court opinion changes the result of the prior order. In the Limitations Order, the Court found that the Committee's claim was not time-barred under the analogous Texas statute of limitations. *See Verizon Employee Benefits Comm. v. Frawley,* No. 3:05–CV–2105–P, 2007 WL 2051113, 2007 U.S. Dist. LEXIS 50928 (N.D.Tex. Jul. 12, 2007).

The Limitations Order addressed whether Verizon's complaint was time-barred by statute of limitations. ERISA does not provide a statute of limitations for claims under § 1132(a)(3) and courts apply the most analogous limitations period under forum-state law. *Frawley,* 2007 WL 2051113, at *1, 2007 U.S. Dist. LEXIS 50928, at *4. The Limitations Order makes clear that the claim for money had and received bears the most similarity to the present one. *Id.* at *4, 2007 U.S. Dist. LEXIS 50928 at *12. Texas courts have been split as to the limitations period in a money-had-and-received claim—some finding the claim to be akin to a conversion claim (subject to a two-year limitations period), others finding the claim as one for debt (subject to a four-year limitations period). *Id.* at *4–5, 2007 U.S. Dist. LEXIS 50928 at *13–15 (citing, among others, *Tanglewood Terrace, Ltd. v. City of Texarkana,* 996 S.W.2d 330 (Tex.App.-Texarkana 1999, no pet.); *Friberg—Cooper Water Supply Corp. v. Elledge (Elledge I),* 197 S.W.3d 826 (Tex.App.-Fort Worth 2006), *rev'd,* 240 S.W.3d 869 (Tex.2007) (per curiam)). In short, because the injury in a money-had-and-received claim does not arise from an alleged wrongdoing, as would a claim for conversion, but is rather a result of an "unacknowledged debt," the Limitations Order found the four-year limitations period applies. Frawley now argues that a recent Texas Supreme Court opinion changes the result of the Limitations order. The case cited, *Elledge v. Friberg—Cooper Water Supply Corp. (Elledge II),* 240 S.W.3d 869 (2007), reverses a

---

**2.** All claims against Verizon Service Corporation were dismissed with prejudice by stipulation of the parties and order of the Court on October 29, 2007. The parties agreed that conduct attributable to Verizon Service Corporation would be attributed to Verizon Communications.

**3.** All claims against The Ayco Company, L.P. were dismissed with prejudice by stipulation of the parties and order of the Court on October 29, 2007.

case cited in the Limitations Order. For the reasons stated below, Frawley's Motion is granted.

## A. Legal Standard

■ Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Under Texas law, " '[a] defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense.' " *Woolley v. Clifford, Chance, Rogers & Wells, LLP,* No. 3:01–CV–2185–D, 2004 WL 57215, at *6, 2004 U.S. Dist. LEXIS 97, at *17 (N.D.Tex. Jan. 5, 2004) (Fitzwater, J.) (quoting *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999)) (alteration in *Woolley* ).

## B. *Elledge II*

■ *Elledge II* "reaffirms that unjust enrichment claims are governed by the two-year statute of limitations." *Elledge II,* 240 S.W.3d at 869. In dicta, the Texas Supreme Court clarifies the statutes at issue here, Texas Civil Practice and Remedies Code §§ 16.003, 16.004.[4] *Id.* "The most logical reading of [the statutes] is to treat 'debt' actions ... as breach of contract claims that fall under the four-year statute of limitations ... while construing the two-year statute's reference to actions for 'taking or detaining the personal property of another' as applicable to extra-contractual actions for unjust enrichment." *Id.* (footnote and citations omitted).

■ *Elledge II* does not expressly clarify a limitations period as it is applied to a money-had-and-received claim. Frawley now argues that claims for money had and received and for unjust enrichment both are classified under the larger umbrella of "extra-contractual" claims for recovery of property, and governed by a two year statute of limitations. (Def.'s Mot. Summ. J. 14 (citing *Elledge II* ).) In the Limitations Order, this Court rejected Frawley's argument that Verizon's claim should be characterized as one for unjust enrichment and Verizon's argument that the claim might be classified as a breach of contract. *Frawley,* 2007 WL 2051113, at *3, 2007 U.S. Dist. LEXIS 50928, at *8–10. The supreme court's opinion identifies the key distinction between the two statutes of limitation as whether a suit seeks relief based on contract or whether the relief sought is extra-contractual. *Id.* Although the lan-

---

4. The statutes read:
§ 16.003. Two–Year Limitations Period
(a) ... [A] person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.
§ 16.004. Four–Year Limitations Period

(a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:
(1) specific performance of a contract for the conveyance of real property;
(2) penalty or damages on the penal clause of a bond to convey real property;
(3) debt;
(4) fraud; or
(5) breach of fiduciary duty.

guage cited by Frawley is not essential to the outcome of *Elledge II,* it is persuasive and relevant to the inquiry first dealt with in the Limitations Order.

The relevant distinction in the statutes of limitation would categorize a debt claim as a breach of contract action, and unjust enrichment as an extra-contractual claim. The claim for money had and received in this case is naturally more akin to an extra-contractual claim.[5] The distinction drawn in the Limitations Order was based on deduction and inference from various appellate-court decisions. *See Frawley,* 2007 WL 2051113, at *4–5, 2007 U.S. Dist. LEXIS 50928, at *13–16. In light of the recent Texas Supreme Court opinion which speaks to and likely resolves this issue, the split over the limitations period applicable to an action for money had and received should be resolved in favor of a two-year limitations period.

The Committee reads *Elledge II* more narrowly, limiting its scope to claims for unjust enrichment. (Pl.'s Resp. 7.) The Committee also points out that the recent opinion is supported by the Limitations order, "[b]ecause the [Limitations Order] accepted Frawley's contention that a claim for unjust enrichment would be governed by a two-year limitations period." (*Id.*) This is correct. What has changed, however, is the precedent interpreting the two statutes of limitation. *Elledge II* serves to clarify the Texas laws applicable to this case.

The Committee also argues that because the lower court's opinion in *Elledge* mentioned a cause of action for money had and received and the supreme court opinion did not, that the supreme court "held that the [lower court] erred by combining unjust enrichment and money had and received under a single statute of limita-

tions." (Pl.'s Resp. 10.) This is not true. The supreme court opinion is entirely consistent with that of the Fort Worth court in its reasoning on the theory of recovery. That is, the Fort Worth Court of Appeals calls unjust enrichment "not an independent cause of action but rather [a 'characterization of] the result of a failure to make restitution of benefits ... passively received....'" *Elledge I,* 197 S.W.3d at 832. The supreme court characterizes the plaintiff's claim in *Elledge I* as arising under "an unjust enrichment *theory,*" suggesting an umbrella under which multiple claims for recovery might be covered. *Elledge II,* 197 S.W.3d at 826. For these reasons, it is erroneous to read the supreme court's opinion as severing the unjust enrichment theory from one for money had and received.

■ Applying a two-year limitations period, there is no doubt that Verizon filed its complaint over two years after this cause of action arose. Frawley was issued a check by the Committee September 1, 2003. (Def.'s Mot. Summ. J. 2.) This lawsuit was filed October 26, 2005. However, a defendant moving for summary judgment on a limitations affirmative defense must not only prove when the cause of action accrued, he must also negate the discovery rule if applicable. *See Woolley,* 2004 WL 57215, at *5–6, 2004 U.S. Dist. LEXIS 97, at *17.

### C. Discovery Rule

■ "In determining when the clock starts running for the purpose of applying a borrowed state statute of limitations to a federally created remedy, federal, not state, law is controlling." *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5, 8 (5th Cir. 1967); *see also Jensen v. Snellings,* 841

---

**5.** This claim was also described as one "unacknowledged" by a writing or contract. *Fraw-* *ley,* 2007 WL 2051113, at *5, 2007 U.S. Dist. LEXIS 50928, at *16.

F.2d 600, 606 (5th Cir.1988); *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, (5th Cir.1987)

In the ERISA statute of limitations for breach of a fiduciary duty, the cause of action accrues to set the limitations period running when the plaintiff has actual knowledge of the harm, regardless of when that harm occurred. *See, e.g., CB Richard Ellis Investors, LLC v. Sonnenblick*, 45 Fed.Appx. 680, 681 (9th Cir.2002) (unpublished); *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 552 (9th Cir.1990); *Larsen v. NMU Pension Trust of the NMU Pension & Welfare Plan*, 902 F.2d 1069, 1073 (2d Cir.1990). Courts have held that under § 1132, a statute of limitations does not begin to run until the party bringing suit knows, or has *reason to know*, of the injury. *See, e.g., Lumenite Control Tech., Inc. v. Jarvis*, 252 F.Supp.2d 700, 707 (N.D.Ill.2003) (rejecting a defense of laches and finding no "unreasonable delay" occurred when the plan notified the defendant of an overpayment when the overpayment was discovered); *Trs. of the Screen Actors Guild—Producers Pension & Health Plans v. Materna*, 70 F.Supp.2d 1082, 1086 (C.D.Cal.1999). The parties generally agree that this is the governing standard for deciding when the Committee's cause of action accrues. (*See* Def.'s Mot. Summ. J. 16; Pl.'s Resp. 14.)

██ In cases of direct corporate liability, "knowledge may be imputed to a corporate employer from information obtained by its supervisory employees and agents." *Magnum Foods v. Continental Cas. Co.*, 36 F.3d 1491, 1501 (10th Cir. 1994). The test for imputing the knowledge of an agent to an employer is whether the "agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation." *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir.1994); *see also Hellenic Inc. v. Bridgeline Gas Distrib. LLC*, 252

F.3d 391, 395 (5th Cir.2001). Frawley believes the evidence presented conclusively negates the discovery rule in this case.

Barbara Chase, an employee of Verizon Corporate Services, was aware of the potential overpayment as early as September 2001, over two years before Frawley retired from Verizon. (*See* Def.'s Mot. Summ. J. App. 80.) In a September 14, 2001 email to Suzanne Amodeo, Chase cautioned Amodeo that, "Although [Frawley's start] date is 4/17/1969, he has a significant amount of service at RH Donnelley which is not eligible for pension accrual." (*Id.*) Amodeo was employed by Hewitt to manually calculate the highest average pay formula (the "formula") for a limited number of Bell Atlantic employees pension plans. (*Id.* at 91 (Chase Depo.).) Those Bell Atlantic employees required a manual calculation for various special reasons, including Frawley's prior benefit under the RH Donnelley that was not to be included in the formula. (*Id.*) Amodeo worked on Frawley's plan for this reason.

Again in June 2002, Chase sent an email instructing three Hewitt employees to "resolve" estimates on Frawley's pension "that may be overstating his service." (*Id.* at 79; *see also* Comm.'s Mot. Summ. J. 11.) The email mentions that prior estimates had included the years of RH Donnelley service. (*Id.*) In deposition, Chase clarified the June 2002 email was meant to alert the employees that Frawley was not eligible for pension accrual for his employment with RH Donnelley. (*Id.* at 105 (Chase Depo.).) The three Hewitt employees to whom the email was addressed were Scott Laudeman, Steven Larson, and Suzanne Laroche. (*Id.* at 79.) Laudeman was "responsible for the plan provisions, documenting the plan provisions associated with new Verizon management pension plans." (*Id.* at 103 (Chase Depo.).) Larson dealt with pension service issues and Laroche had prepared Frawley's prior es-

timates attached to the email. (*Id.* at 79 (Chase email).)

After the email was sent, Hewitt's automated system generated and sent Frawley a pension estimate of $523,020.74 (in error). (Comm.'s Mot. Summ. J. 11.) After this estimate was sent, and in light of Chase's June 2002 email, a "flag" was added to Frawley's account in July 2002. (*Id.*) In making the May 2003 calculation, Hewitt once again misestimated Frawley's retirement account, this time on a manual calculation. (*Id.* at 13.) Here, the Committee persistently points the finger at Frawley for accepting and electing to receive the lump sum on this miscalculation even though he had been informed by Chase that his RH Donnelley service was not to be included.[6] (*Id.*) This is not relevant, however, to the issue of the Committee's knowledge of the error.

If Hewitt and its employees can be considered agents, employed to represent the Committee with respect to Frawley's pension, who acquired knowledge material to that representation, then their knowledge of the accounting error may be imputed to the Committee. By the Committee's own statement, Hewitt was hired for the express purpose of providing estimates to employees of their anticipated retirement benefits. Chase repeatedly reminded Hewitt of the special circumstance surrounding Frawley's benefits. A group of employees within Hewitt was assembled to handle special circumstances in pension estimates—namely Frawley's RH Donnelley service. Hewitt even "flagged" Frawley's account to alert the employees to his special circumstance, and nonetheless issued to Frawley the erroneous estimate.

In short, Hewitt was hired by the Committee to handle pension estimates. Hew-

itt was the agent of the Committee in handling estimates of anticipated retirement benefits. Hewitt was alerted to its mistake and took action to prevent its repeat, but repeated the mistake nonetheless. Hewitt's "flagging" Frawley's account proves it knew of the problem. Hewitt's knowledge of this problem is therefore imputed to the Committee, and the Committee is therefore not shielded by the discovery rule. At the least, Hewitt was in possession of information from which it could and should have known about its mistake in calculating Frawley's pension.

### III. Conclusion

Frawley is correct that a two-year statute of limitations applies to this claim and has negated the discovery rule. For these reasons, Frawley's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

---

6. The Court notes that although Chase told Frawley that his time with RH Donnelley would not count toward his pension accrual, Frawley continued to receive estimates which included the RH Donnelley service. Frawley initially disagreed with Chase and could reasonably believe the issue had been resolved in his favor.