PLAYMAKERS LLC, a Washington limited liability company, Plaintiff–Appellant,

v.

ESPN, INC., a Delaware corporation; ABC Cable Networks Group, a California corporation; Orly Adelson Productions, Inc., a California corporation, Defendants–Appellees.

No. 04–35031.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 2004.

Filed July 15, 2004.

---

33. *Marcucci,* 299 F.3d at 1159.

34. *Id.* at 1164.

35. *Id.*

36. 343 F.3d at 1027, n. 1.

37. *Navarro–Vargas,* 367 F.3d at 898.

38. *Id.*

O. Yale Lewis, Jr., Hendricks & Lewis, Seattle, WA, for plaintiff-appellant.

Robert L. Raskopf, White & Case, LLP, New York, NY, and Stokes Lawrence, P.S., Seattle, WA, for defendants-appellees.

Before PREGERSON, THOMPSON, and CALLAHAN, Circuit Judges.

PREGERSON, Circuit Judge.

PlayMakers, LLC ("LLC") appeals the district court's denial of its motion for a preliminary injunction in its trade-mark infringement action against ESPN, Inc. ("ESPN"). We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

## I. Background

LLC, formed in 1997, holds two registered trademarks involving the word "Playmakers" for "agency services, namely, representing and advising professional athletes and aspiring professional athletes

in contract negotiations with professional sports teams and in endorsements and appearances." LLC relies primarily on word-of-mouth for its marketing. ESPN is a sports entertainment cable network that primarily broadcasts sporting events and sports-related television programming. In June 2003, ESPN began advertising heavily in the mainstream media a new dramatic series, "Play-makers" (the "Series"), which offers a behind-the-scenes view of a fictional professional football team. When the Series debuted in late August 2003, LLC filed this action for federal trademark infringement and related claims.

On average, episodes of the Series drew an audience of about 1.6 million households. Several professional football players and National Football League representatives publicly criticized the Series for exaggerating negative stereotypes, for example, the prevalence of illegal drug use and domestic abuse among football players. The Series also received some critical acclaim.

In November 2003, the day after the first season of the Series ended, LLC moved for a preliminary injunction enjoining ESPN's use of the title "Playmakers" in a second Series season, in the sale of the Series to another network, or in the release of the Series on video and DVD. LLC contended that it was likely to succeed on the merits of its "reverse confusion" infringement claim. It argued that ESPN's extensive, yet junior, use of LLC's mark as the title of a controversial program about professional football players was likely to devalue LLC's mark and the goodwill of its business. Specifically, LLC contended that professional and aspiring professional football players likely would decline to deal with LLC after mistakenly: (1) associating LLC with the gritty Series; or (2) believing that LLC was infringing upon the Series's mark in an effort to capitalize on ESPN's goodwill.

At the conclusion of the preliminary injunction hearing, the district court denied the motion orally. The court specified that it would issue a written order, but first orally announced to the parties "where [it] was going ... in order to remove the cloud and anticipation." The court briefly outlined the basis for its ruling, then, eight days later, issued its more detailed written order denying LLC's motion. The district court's order is published at 297 F.Supp.2d 1277 (W.D.Wash.2003).

## II. Appellate Review

■ Where the record includes both oral and written rulings on the same matter, "[w]e review the written opinion and not the oral statements." *United States v. Robinson*, 20 F.3d 1030, 1033 (9th Cir. 1994). We do so because "[o]ral responses from the bench may fail to convey the judge's ultimate evaluation. Subsequent consideration may cause the district judge to modify his or her views." *Ellison v. Shell Oil Co.*, 882 F.2d 349, 352 (9th Cir. 1989).

Our review of an order denying a preliminary injunction is "limited and deferential." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir.2003) (en banc). In general, we review the denial of a preliminary injunction for abuse of discretion. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir.1999). The district court "necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir.2001) (en banc), *rev'd on other grounds, Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002). When the district court is alleged to have relied on an erroneous legal prem-

ise, we review the underlying issues of law de novo. *Does 1–5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir.1996).

## III. Likelihood of Confusion

■ The ultimate question in a reverse confusion case is "whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir.1998). The test is whether a "likelihood of confusion" exists—"whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Id.* at 1129 (internal quotation and footnote omitted). The eight factors originally listed in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), guide that inquiry.

■ In its written order, the district court identified and applied the appropriate standards governing the likelihood of confusion analysis in a reverse confusion trademark infringement case. One of LLC's primary complaints is that the district court erred in its determination that tarnishment "is not a factor in the likelihood of confusion analysis." 297 F.Supp.2d at 1284. LLC cites no binding authority suggesting otherwise. Tarnishment may be a theory of liability or a type of harm, but it is not itself a factor to be considered in determining whether consumer confusion is likely.

■ LLC's contention that the district court misapplied various *Sleekcraft* factors also lacks merit. The district court's order relies on no erroneous legal standards or clearly erroneous findings of fact. Further, the district court's evaluation of the *Sleekcraft* factors demonstrates an accurate understanding of the relevant legal principles and a fair assessment of the evidence. Like the district court, we are persuaded that, despite the marks' similarities,[1] the commonness of the term "playmaker,"[2] the remoteness of the parties' lines of business, the differences in their choices of marketing channels, and the degree of care professional and aspiring professional athletes are likely to exercise before choosing an agent strongly suggest that LLC's prospective clients are not likely to be confused. We therefore conclude that the district court did not abuse its discretion in concluding that LLC failed to show a sufficient likelihood of success on

---

1. Although the two marks share the same sound and meaning, they are visually distinguishable as typically used by the parties in print. *Compare* the two marks as they usually appear, reproduced below, and the district court's discussion of their noticeable differences in font, typesetting, color, and use of stars, 297 F.Supp.2d at 1282–83, *with GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir.2000) (concluding that GoTo.com and Go Network logos were "glaringly" and "overwhelmingly similar" because they both "consist[ed] of white capital letters in an almost identical sans serif font rendered on a green circle ... matted by a square yellow background").

2. The Oxford English Dictionary cites usage of "playmaker" in the sports context beginning in 1942, and defines the term as "[a] player in a team game, esp[ecially] basketball, who leads an attack, or brings other players on his side into a position to score." Oxford English Dictionary (2d ed.1989); *see also* Random House Unabridged Dictionary 1104 (1973) (defining "playmaker" as "an offensive player, as in basketball or ice hockey, who executes plays designed to put one or more teammates in a position to score").

PLAY MAKERS

the merits to warrant a preliminary injunction.

## IV. Balance of Hardships

██ Nor did the district court abuse its discretion in determining that, even assuming LLC demonstrated serious questions going to the merits, it did not show that "the balance of hardships tips sharply in favor" of granting an injunction. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 869 (9th Cir.2003). The evidence before the district court demonstrated ESPN's significant financial investment in its Series and the advertising revenue that would be lost if an injunction were to issue. The district court appropriately contrasted this evidence against the lack of proof quantifying the harm that LLC would suffer absent preliminary relief.

\* \* \*

We affirm the district court's denial of LLC's motion for a preliminary injunction. Our opinion reaches only the issues explicitly discussed; we have not reviewed portions of the district court's order that are unnecessary to its decision to deny LLC's motion for preliminary relief.

AFFIRMED.