**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN R. PREMINGER and SANTA
CLARA COUNTY DEMOCRATIC
CENTRAL COMMITTEE,
            *Plaintiffs-Appellants,*

            v.

ANTHONY J. PRINCIPI, as Secretary
of Veterans Affairs and in his
personal capacity; ELIZABETH
FREEMAN, as Director of the Palo
Alto Health Care System and in
her personal capacity; HELEN
GIRTON; SACHA POULENZ; and
MYREL WILLEFORD,
            *Defendants-Appellees.*

No. 04-16981

D.C. No.
CV-04-02012-JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy Fogel, District Judge, Presiding

Argued and Submitted
May 9, 2005—San Francisco, California

Filed August 25, 2005

Before: Michael Daly Hawkins and Susan P. Graber,
Circuit Judges, and James V. Selna,* District Judge.

Opinion by Judge Graber;
Concurrence by Judge Selna

---

*The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

11533

## COUNSEL

Michael M. Markman, Heller Ehrman White & McAuliffe LLP, Menlo Park, California, for the plaintiffs-appellants.

Owen P. Martikan, Assistant United States Attorney, San Francisco, California, for the defendants-appellees.

## OPINION

GRABER, Circuit Judge:

The Santa Clara County Democratic Central Committee and its chair, Steven Preminger, are Plaintiffs in this action. They challenge the Department of Veterans' Affairs' ("VA") exclusion of Preminger and others from VA premises when they tried to register resident veterans to vote. Plaintiffs claim that the VA regulation used to justify their expulsion, which prohibits partisan activities on VA premises, violates the First Amendment. The district court denied Plaintiffs' request for a preliminary injunction against Defendants, the Department of Veterans' Affairs and several of its employees. We hold

that the district court did not abuse its discretion in concluding that Plaintiffs failed to demonstrate probable success on the merits of their claim and, therefore, affirm the denial of a preliminary injunction.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2004, about six months before the November 2004 presidential election, Preminger and his lawyer, Scott Rafferty, along with another California resident, visited the VA Menlo Park Campus with the intent to register voters. The Campus provides care for elderly, homeless, disabled, and psychologically impaired veterans. The veterans are housed in numerous buildings, including Building 331, which provides long-term nursing home care for up to 150 residents.

The April 2004 visit was not Rafferty's first. On earlier occasions, he had tried to register voters but had been denied access by VA employees. Rafferty apparently had been disruptive and confrontational with the VA staff when he was told that he could not register voters on the premises. After his first attempt was rebuffed, Rafferty contacted various VA officials and sought their advance permission to register voters at the Campus. Eventually, the Director of the Palo Alto Health Care System, which oversees the Campus, granted Rafferty permission to register voters on the Campus provided that his actions did not interrupt patient care and that the unit's nursing manager agreed.

Despite this advance permission, when Preminger and Rafferty entered Building 331 in April 2004, a VA employee recognized Rafferty and told the group to leave. The employee then called the VA police, who briefly stopped the men in the parking lot.

After the April incident, Plaintiffs filed this action challenging the VA's refusal to allow them to register voters on the Campus. Plaintiffs sought a preliminary injunction to pro-

hibit the VA from (1) enforcing 38 C.F.R. § 1.218(a)(14), the VA regulation that bans partisan activity on VA premises; (2) conditioning the right to visit VA premises on a person's expressed or assumed political affiliation or conduct; (3) requiring prior authorization for political expression by visitors; and (4) interfering with the receipt of political contributions on VA grounds.[1] After a hearing, the district court denied Plaintiffs' motion. The court analyzed Plaintiffs' claim as an as-applied challenge to the regulation, rather than a facial one, and held that Rafferty's alleged inappropriate conduct justified Plaintiffs' exclusion from the Campus.

Plaintiffs timely appeal the denial of their motion for a preliminary injunction.

## STANDARDS OF REVIEW

We review for abuse of discretion a district court's order denying a preliminary injunction. *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam). Our review is limited, affording the district court's decision considerable deference. *Id.* We will reverse if the district court relied on an erroneous legal standard or clearly erroneous findings of fact. *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 964 (9th Cir. 2002). We may affirm a decision by the district court on any ground supported by the record, even if the district court's reasoning differs from our own. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (per curiam).

---

[1]Plaintiffs allege that the VA stopped them from collecting unsolicited political contributions on VA premises, but they have not briefed the issue. Accordingly, we do not address it further. *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988).

## DISCUSSION

### A. *Jurisdiction*

Before we address the merits of Plaintiffs' claim, we must first consider a threshold jurisdictional issue. Plaintiffs mount both a facial and an as-applied First Amendment challenge to VA regulation 38 C.F.R. § 1.218(a)(14),[2] which bans partisan activity. The district court held that, although it retained jurisdiction to review an as-applied challenge to 38 C.F.R. § 1.218(a)(14), it lacked jurisdiction to review a facial challenge to the regulation. We agree.

[1] Generally, a federal court may review a facial challenge to a regulation promulgated by an agency under its broad federal-question jurisdiction. *See* 5 U.S.C. § 703 (providing

---

[2]The relevant text of the regulation provides:

(14) Demonstrations.

(i) All visitors are expected to observe proper standards of decorum and decency while on VA property. Toward this end, any service, ceremony, or demonstration, except as authorized by the head of the facility or designee, is prohibited. Jogging, bicycling, sledding and other forms of physical recreation on cemetery grounds is prohibited.

(ii) For the purpose of the prohibition expressed in this paragraph, unauthorized demonstrations or services shall be defined as, but not limited to, picketing, or similar conduct on VA property; any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service; the display of any placards, banners, or foreign flags on VA property unless approved by the head of the facility or designee; disorderly conduct such as fighting, threatening, violent, or tumultuous behavior, unreasonable noise or coarse utterance, gesture or display or the use of abusive language to any person present; and *partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise.*

(Emphasis added.)

for judicial review of agency proceedings in any court of competent jurisdiction in the absence of another congressionally mandated review process). But when Congress provides for a "special statutory review proceeding" in one specific court, challenges to the administrative action must take place in the designated forum. *Id.* We face just such a situation because Congress has designated a judicial review path for challenges to VA regulations under 38 U.S.C. § 502.[3]

**[2]** Section 502 gives the Federal Circuit exclusive jurisdiction to review challenges to most actions by the Secretary of Veterans' Affairs. In particular, § 502 applies to (1) actions that require publication in the Federal Register, such as rules of procedure, substantive rules of general applicability, statements of general policy, and amendments, revisions, or repeals to those actions, under 5 U.S.C. § 552(a)(1); and (2) agency rulemaking, under 5 U.S.C. § 553. Thus, Congress explicitly has provided for judicial review of direct challenges to VA rules and regulations only in the Federal Circuit. *See Chinnock v. Turnage*, 995 F.2d 889, 893 (9th Cir. 1993) ("Under 38 U.S.C. § 502, VA rulemaking is subject to judicial review only in the Federal Circuit."); *Hall v. U.S. Dep't Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir. 1996) (per curiam) (holding that a direct facial constitutional attack on a VA regulation must be pursued in the Federal Circuit). The VA regulation at issue here, 38 C.F.R. § 1.218, was added as an amendment to an already existing rule, and it was published in the Federal Register as required by 5 U.S.C. § 552(a)(1)(E). *See* 50 Fed. Reg. 29,226, 29,226 (July 18, 1985) ("These regulation amendments clarify and update the rules governing the

---

[3]The statute provides in part:

> An action of the [VA] Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers . . . is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and *may be sought only in the United States Court of Appeals for the Federal Circuit*.

(Emphasis added.)

standards of conduct on property under the charge and control of the VA . . . .”). Accordingly, any direct challenge to its validity must be brought in the Federal Circuit.

Although we are statutorily barred from reviewing a facial challenge to a VA regulation, we retain jurisdiction to review an as-applied challenge. The *application* of a rule that is deemed to be (or that the Federal Circuit has held to be) valid to a particular party or individual is neither rulemaking nor an action by the Secretary that requires notice and publication. *See Griffin v. Dep't of Veterans Affairs*, 274 F.3d 818, 820 (4th Cir. 2001) (“*Griffin II*”) (reviewing the constitutionality of VA regulation 38 C.F.R. § 1.218 as applied to the parties).

In fact, the Fourth Circuit has reviewed a similar First Amendment challenge to the same regulation at issue here, 35 C.F.R. § 1.218(a)(14). In *Griffin v. Dep't of Veterans Affairs*, 129 F. Supp. 2d 832, 836 (D. Md. 2001) (“*Griffin I*”), the plaintiff filed a motion for a preliminary injunction to stop the VA from prohibiting him, under § 1.218(a)(14), from displaying a Confederate flag at a VA-run cemetery. The district court held that it lacked jurisdiction to review a facial challenge to the regulation. *Griffin I*, 129 F. Supp. 2d at 837. The court did, however, exercise jurisdiction over the plaintiff's as-applied challenge. *Id.* at 837-38. On review, the Fourth Circuit did not disturb the district court's holding that it lacked jurisdiction to hear a facial challenge, and went on to analyze the VA regulation's application to the plaintiff. *Griffin II*, 274 F.3d at 820. Thereafter, the plaintiff brought suit in the Federal Circuit to challenge the constitutionality of the regulation on its face. *Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1316 (Fed. Cir. 2002) (“*Griffin III*”). Thus, plaintiffs have available judicial avenues in which to bring both as-applied and facial challenges to VA regulations.

Plaintiffs argue that, even if the district court lacked jurisdiction to review a facial challenge to § 1.218, it nonetheless erred by failing to transfer that portion of the case to the Fed-

eral Circuit under 28 U.S.C. § 1631. Section 1631 requires a court that is without jurisdiction to hear a case to transfer that case to the correct forum if the interests of justice so demand.[4] We review for abuse of discretion the court's decision not to transfer the case. *Taylor v. Soc. Sec. Admin.*, 842 F.2d 232, 233 (9th Cir. 1988).

**[3]** The Federal Circuit already has reviewed a facial challenge to § 1.218 and has held that the regulation is not unconstitutional on its face. *Griffin III*, 288 F.3d at 1331. Moreover, Plaintiffs could have followed the same procedure as the plaintiff in *Griffin*, by asking that the VA waive or amend § 1.218(a)(14). If such a request had been made and denied, Plaintiffs could have filed a separate action in the Federal Circuit to challenge the validity of the regulation. *See Griffin III*, 288 F.3d at 1317 (noting that the court had jurisdiction to review a facial challenge to the regulation because the VA's refusal to waive or amend § 1.218(a)(14) was a final agency action); Fed. Cir. Rule 47.12(a) (providing for review of agency action under 38 U.S.C. § 502 within 60 days of a denial of a request for amendment or waiver of a rule or regulation). Because the issue already has been addressed by the Federal Circuit and because Plaintiffs could have brought an action themselves in the correct forum, the district court did not abuse its discretion by declining to transfer the case. *See Hill v. U.S. Air Force*, 795 F.2d 1067, 1070-71 (D.C. Cir. 1986) (per curiam) (noting that, in deciding whether to grant or deny a motion to transfer, a court should consider timeliness concerns for bringing suit in the alternate forum and

---

[4]Title 28 U.S.C. § 1631 provides in part:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . .

whether certain claims could still be heard in the original forum).

Accordingly, we now turn to the merits of Plaintiffs' as-applied challenge to 38 C.F.R. § 1.218.

## B. *Preliminary Injunction Standards*

To prevail on their motion for a preliminary injunction, Plaintiffs must demonstrate "either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in [their] favor." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Both of those approaches require us to assess the potential merits of the parties' positions and the harm or hardship that they will face from a grant or denial of the preliminary injunction. *Sammartano*, 303 F.3d at 965. Finally, we review "whether the public interest will be advanced by granting preliminary relief." *Overstreet v. United Bhd. of Carpenters & Joiners, Local Union No. 1506*, 409 F.3d 1199, 1207 (9th Cir. 2005).

## 1. *Building 331 is a Nonpublic Forum*

**[4]** Plaintiffs contend that VA regulation 38 C.F.R. § 1.218 violates their First Amendment right to free expression on government property. In order to assess their claim, we first must "identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

**[5]** Public property, depending on its character, falls within one of three main categories for purposes of First Amendment analysis. *Public fora* are places, such as streets and parks, that have traditionally been devoted to expressive activity. *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983). Content-based restrictions in public fora are justified

only if they serve a compelling state interest that is narrowly tailored to the desired end. *Id. Designated public fora* are areas that the government affirmatively has opened to expressive activity, and exclusion from these fora must also satisfy strict scrutiny. *Id.* at 45-46. *Nonpublic fora*, areas that have not traditionally or explicitly been open to expressive activity, are subject to a more lenient standard. *Id.* at 46. Content-based restrictions in nonpublic fora need only be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*

With that background, we must classify Building 331.[5]

---

[5]The VA characterizes Plaintiffs' motion as a request solely to enter Building 331. Plaintiffs' Complaint seeks access to "VA premises" and mentions various buildings, parks and streets on the Campus. Plaintiffs also confirmed this scope at argument. Accordingly, we understand Plaintiffs originally to have requested access to the Campus at large. *See Cornelius*, 473 U.S. at 801 (noting that "[w]hen speakers seek general access to public property, the forum encompasses that property," but when the access sought is limited, then the parameters of the forum are similarly circumscribed). But Plaintiffs' mere mention of the parks and streets on the Campus, areas generally considered traditional public fora, is insufficient for us to classify them because the preliminary injunction record contains insufficient detail. Areas that are traditionally considered public fora may be classified as nonpublic depending on their location in conjunction with other nonpublic fora and their purpose. *See United States v. Kokinda*, 497 U.S. 720, 728-29 (1990) ("[T]he location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum."). For example, we have held that postal sidewalks that are separated from municipal sidewalks constitute a nonpublic forum. *Monterey County Democratic Cent. Comm. v. United States Postal Serv.*, 812 F.2d 1194, 1197 (9th Cir. 1987). At the preliminary injunction stage, Plaintiffs have the burden of proof.

Even assuming a more complete preliminary injunction record, we would not reach Plaintiffs' additional claims. Plaintiffs did not clearly argue in this court that the VA applied the regulation improperly to areas *other than* Building 331 until their reply brief on appeal. That is too late. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 n.2 (9th Cir. 2001) (noting that a court may consider an issue waived which is not raised in an opening appellate brief). Accordingly, for the purposes of this appeal we analyze only Plaintiffs' exclusion from Building 331.

Plaintiffs contend that Building 331 is a designated public forum because the VA itself characterizes the lobby and entrance ways as "public" and because the building acts as a home for veterans.

**[6]** In a written guideline regarding partisan activity, the VA has characterized the grounds, entrances, and lobbies of VA premises as "public areas." Campaigning and Other Partisan Political Activities on VA Premises: Guidelines. But the VA's reference to "public areas" does not automatically transform those spaces into designated public fora for First Amendment purposes. *See Cornelius*, 473 U.S. at 802 (noting that, to create a designated public forum, the government must have acted intentionally to open up the space for public discourse). Moreover, the mere fact that veterans reside in Building 331 does not render it a public forum — it is the government's purpose, not the forum's users, that informs the characterization of a forum. Designated public fora are not created haphazardly, and the Supreme Court has found them to exist only in places where the government has expressly dedicated the property for expressive conduct. *See, e.g., Widmar v. Vincent*, 454 U.S. 263, 267 (1981) (university meeting facilities); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975) (municipal auditoriums). The purpose of Building 331 is not to facilitate public discourse; to the contrary, the VA has established the facility to provide for veterans who require long-term nursing care. Any meetings between those veterans and their visitors are ancillary to the facility's primary aim of providing long-term nursing services to veterans. Consequently, we conclude that Building 331 is a nonpublic forum.

   2. *Application of the Regulation was Reasonable and Viewpoint Neutral*

**[7]** The VA justified its exclusion of Plaintiffs under 38 C.F.R. § 1.218(a)(14). That regulation prohibits certain expressive activity on VA premises, specifically, "partisan activities," which include "commentary or actions in support

of, or in opposition to, or attempt[s] to influence, any current policy of the Government of the United States, or any private group, association, or enterprise." For purposes of briefing this appeal, Plaintiffs have assumed that their voter registration effort was a partisan activity. The VA's restriction of Plaintiffs' expressive conduct in Building 331, a nonpublic forum, does not violate the Constitution as long as it is (1) "reasonable in light of the purpose served by the forum" and (2) "viewpoint neutral." *Cornelius*, 473 U.S. at 806.

### a. *Reasonableness*

The reasonableness inquiry requires us to examine the VA's actions "in the light of the purpose of the forum and all the surrounding circumstances." *Id.* at 809. The VA must have more than a rational basis for its actions; the restriction must reasonably fulfill a legitimate need. *Sammartano*, 303 F.3d at 967. Yet, in a nonpublic forum, the restriction need not constitute the least restrictive alternative available. *Swarner v. United States*, 937 F.2d 1478, 1482 (9th Cir. 1991).

[8] The VA gave several reasons for excluding Plaintiffs in light of Building 331's purpose as a nursing home. Most persuasively, the VA argued that it excluded Plaintiffs in order to prevent the appearance of partisan affiliation. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 168 (2003) (noting that voter registration confers significant benefits on political candidates). In a nonpublic forum, the government may restrict expressive activity so as to avoid the perception that it favors one political group over another. *See Cornelius*, 473 U.S. at 809 ("[A]voiding the appearance of political favoritism is a valid justification for limiting speech in a nonpublic forum."); *Monterey County Democratic Cent. Comm. v. United States Postal Serv.*, 812 F.2d 1194, 1199 (9th Cir. 1987) (holding that the Postal Service's desire to remain free from the "appearance of involvement in the political process" is a reasonable justification for regulating expressive activity

in a nonpublic forum). The VA cares for a large number of veterans, some of whom live permanently on VA premises. In an effort to avoid alienating any of the veterans who are receiving treatment at its facilities, the VA reasonably could conclude that limiting the appearance of partisan involvement is critical to its ability to carry out its mission. Because the VA has presented one clearly reasonable rationale for its decision to exclude Plaintiffs, we need not address the many other reasons in support of its position.

####    b.   *Viewpoint Neutrality*

Even if the application of § 1.218 to Plaintiffs is reasonable, the VA must still show that it excluded Plaintiffs for viewpoint-neutral reasons. The VA allows other groups that it classifies as nonpartisan — for example, the League of Women Voters — to register voters on VA premises. Plaintiffs assert that the VA's exclusion of their voter registration effort was motivated by the "nature of the message rather than the limitations of the forum or a specific risk within that forum," *Sammartano*, 303 F.3d at 971, because both Plaintiffs and the "nonpartisan" groups are engaging in partisan activity by attempting to register voters. The VA counters that its actions are viewpoint-neutral because it excludes *all* political parties from registering voters on the Campus.

The contours of viewpoint neutrality analysis are often difficult to discern. *See id.* at 970 ("We freely admit that the Supreme Court's concept of viewpoint neutrality in First Amendment jurisprudence has not been easy to understand."). In this instance though, we are aided by applicable precedents from both the Supreme Court and this circuit.

**[9]** The Supreme Court has held that, in a nonpublic forum, the government has "the right to make distinctions in access on the basis of subject matter and speaker identity." *Perry Educ. Assn.*, 460 U.S. at 49; *id.* at 49 n.9 (noting that a school board's decision to limit union access to a school's internal

mail system was viewpoint neutral because all unions, except for the recognized bargaining representative of the teachers, were excluded and there was no indication that the policy was implemented to suppress a particular message). Even more specifically, we have upheld a distinction very similar to the one that Plaintiffs challenge here. The postal service enacted a regulation that allowed only government agencies and non-profit civic leagues to register voters, but excluded political parties from doing the same. *Monterey County*, 812 F.2d at 1195. The local Democratic Party challenged that regulation, claiming that it violated their First Amendment right to engage in expressive conduct on government property. After classifying the area to which the plaintiffs had requested access as a nonpublic forum, we held that the restriction banning political parties from registering voters qualified as viewpoint neutral. *See id.* at 1198-99 ("By excluding all partisan groups from engaging in voter registration — conduct permitted by non-partisan groups — *the Postal Service is not granting to one side of a debatable public question a monopoly in expressing its views*." (internal quotation marks and ellipses omitted) (emphasis added)).

**[10]** The VA asserts that it excludes all political parties and there is nothing to suggest that the VA "intended to discourage one viewpoint and advance another." *Id.* at 1198. In light of *Monterey County* and the Supreme Court's holding that, in a nonpublic forum, distinctions on the basis of speaker identity are permissible, the district court did not abuse its discretion by holding that Plaintiffs failed to demonstrate a likelihood of success on the merits.

### 3. *Plaintiffs Did Not Demonstrate Significant Irreparable Harm*

The preliminary injunction analysis does not end with a review of the possible merits of Plaintiffs' claim. We must turn next to the potential for irreparable harm and to the balance of hardships that will result from a denial of Plaintiffs'

motion. *Overstreet*, 409 F.3d at 1207. The smaller the probability of a plaintiff's success, the greater must be the showing of irreparable harm. *A&M Records*, 239 F.3d at 1013.

**[11]** Because the district court properly held, at the preliminary injunction stage, that Plaintiffs did not show a probability of success on the merits, to prevail on their motion they had to show significant irreparable harm. This they failed to do. Their inability to register residents of Building 331 until the outcome of a trial on the merits does not, on this record, outweigh the VA's legitimate interest in providing the best possible care for veterans on the Campus and in maintaining political neutrality for the benefit of Campus residents.

### 4.  *The Public Interest Does Not Require an Injunction*

**[12]** Finally, we must consider the public interest. *See Westlands Water Dist. v. Natural Res. Def. Council*, 43 F.3d 457, 459 (9th Cir. 1994) ("If the public interest is involved, the district court must also determine whether the public interest favors the [plaintiffs]"). "The public interest inquiry primarily addresses [the] impact on non-parties rather than parties." *Sammartano*, 303 F.3d at 974. Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution. *See, e.g.*, *id.* (noting "the significant public interest in upholding First Amendment principles"). Because Plaintiffs have not shown a likelihood of success on the merits of their First Amendment claim, because the VA has a competing public interest in providing the best possible care, in a politically neutral environment, for the veterans seeking services from the Campus, and because other means are available for registering resident veterans to vote, the public interest does not require us to reverse the district court.

**[13]** To conclude, we cannot say, on this record, that the district court abused its discretion by denying Plaintiffs' motion for a preliminary injunction.

AFFIRMED.

SELNA, District Judge, concurring:

I concur in the Judgment and in the Opinion with the exception of Section B.2.b of the Discussion. I would affirm the district court's denial of the motion for a preliminary injunction on the ground that it did not abuse its discretion. *Beardslee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005); *Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 896 (9th Cir. 2004); *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam).