Cheryl BOWEN

v.

**CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC. EMPLOYEE WELFARE BENEFIT PLAN**

No. CV064679CASJCX.

United States District Court, C.D. California.

Sept. 7, 2006.

Elizabeth K. Green, Lisa S. Kantor, Kantor and Kantor, Northridge, CA, for Cheryl Bowen.

Elaine Cribbs Rizza, Rizza Group, Washington, PA, Joseph Kouri, Nikki Fong, Sedgwick Detert Moran and Arnold, Los Angeles, CA, for Consolidated Electrical Distributors, Inc. Employee Welfare Benefit Plan.

SNYDER, District Judge.

**Proceedings: (IN CHAMBERS): PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (filed August 2, 2006)**

## I. INTRODUCTION AND BACKGROUND

The instant case is an action brought under 29 U.S.C. sections 1132(a), (e), (f) and (g) of the Employment Retirement Income Security Act of 1974 (hereinafter "ERISA"). Plaintiff Cheryl Bowen sued Consolidated Electrical Distributors, Inc. ("defendant"), claiming that she is entitled to benefits under defendant's Employee Welfare Benefit Plan ("Plan"), an employee benefit plan regulated and governed by ERISA. Plaintiff alleges that defendant has wrongfully and arbitrarily denied coverage for her prescribed daily doses of intravenous Benadryl and Phenergan. Mot. at 3. Defendant contends that the intravenous medications are not "medically necessary" as defined by the Plan, and therefore defendant acted properly in denying plaintiff's claims for coverage. Opp'n at 3 (citing Kelly Decl. at 12, 20 and Ex. 10.).

On July 26, 2006, plaintiff filed suit against defendant, alleging claims for (1) wrongful denial of medical benefits under 29 U.S.C. section 1132(g)(1); and (2) equitable relief under 29 U.S.C. section 1132(a)(1)(B).

On August 2, 2006, plaintiff filed a motion requesting the Court to issue an order enjoining defendant from continuing to withhold health insurance benefits from plaintiff under the Plan, and to order defendant to immediately pay benefits for health care services and prescription medications necessary to sustain plaintiff's life. Defendant filed its opposition on August 14, 2006, and on August 21, 2006, plaintiff filed a reply. Defendant filed a sur-reply on August 25, 2006. In accordance with the Court's instruction, plaintiff filed a supplemental brief regarding waiver of the bond requirement and defendant filed a supplemental opposition on September 1, 2006. Having carefully considered the arguments of the parties, the Court finds and concludes as follows.

## II. FACTS

Plaintiff asserts that in 1992 she suffered severe asthma and allergic reactions as a result of long-term exposure to toxic molds and bacteria. Mot. at 1. Plaintiff further alleges that this exposure caused symptoms of systemic lupus to return after almost 20 years of remission, all of which further exacerbated the allergic reactions. Mot. at 1. As a result, plaintiff alleges that she has suffered frequent episodes of anaphylactic shock which caused her to be hospitalized every four to six weeks. Mot. at 1–2. In 2002, University of California at San Diego ("UCSD") physicians treated plaintiff with daily intravenous injections of Benadryl and Phenergan. Mot. at 2. Plaintiff asserts that the treatment reduced the frequency of plaintiff's hospitalizations, reduced her steroid dependency, and enabled plaintiff to lead a more normal life. Mot. at 2 (citing Kantor Decl., Ex. A at 5). On July 7, 2002, plaintiff was admitted to the hospital because of a fever and pain due to an infection near plaintiff's port-a-cath, which is used to administer the intravenous medications. Opp'n at 10 (citing Ex. 19 to Kelly Decl., App. at 234, 240). Plaintiff's medical records show that she has had at least two other infections at the site of the port-a-cath in September 2005, and February 2006, Opp'n at 10; Ex.

4 to Kelly Decl., App. at 120; and Ex. 19 to Kelly Decl., App. at 210–212; 217. Despite these infections, plaintiff's treating physician continues to prescribe the intravenous treatments as the recommended preventative treatment for her severe allergies. Mot.App. A at 5.

Plaintiff has been insured during this time through her husband's employer, defendant herein. Mot. at 2. The Plan was previously administered by Aetna and First Heath, and both companies authorized payment of plaintiff's intravenous medications. Mot. at 2. On June 1, 2005, Blue Cross became the Plan's administrator. Mot. at 2. Blue Cross allegedly authorized plaintiff's port-a-cath insertion, but subsequently refused to pay for the intravenous medications for which the line was inserted. Mot. at 2; Mot.App. at 8. Plaintiff has submitted repeated appeals to Blue Cross, but her appeals have been denied after three independent physicians found that the intravenous treatment was not "medically necessary" as defined by the Plan. Opp'n at 3–5 (citing Kelly Decl. at 12, 20; Ex. 10 to Kelly Decl). The record does not reflect that defendant's independent physicians actually examined plaintiff, as opposed to merely reviewing her medical records. Reply at 7 (noting that a company located in Pennsylvania provided the independent medical reviews); Opp'n, Ex. 10 at 140–41; and Opp'n Ex. 14 at 154–55. As a result of the Plan's refusal to cover the intravenous medications, plaintiff's pharmacy purportedly refuses to continue filling the prescription unless plaintiff pays up to $850 cash each week out-of-pocket. Mot. at 1–2.

## III. DISCUSSION

### A. Legal Standard for Preliminary Injunction

■ In order to be entitled to a preliminary injunction, plaintiff must show ei-

ther (1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in plaintiffs' favor. *Preminger v. Principi,* 422 F.3d 815, 822–23 (9th Cir.2005) (internal citations omitted); *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). Both approaches require the court to assess the potential merits of the parties' positions, as well as the harm or hardships they will face if the motion for preliminary injunction is granted or denied. *Preminger,* 422 F.3d at 823. Accordingly these are not distinct tests, but rather "the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Rodeo Collection, Ltd.,* 812 F.2d at 1217. A "serious question" is one in which the movant has a fair chance of success on the merits. *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir.1984).

■ The Ninth Circuit has also stated that "the critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly in toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1389 (9th Cir.1988) (citing *Aguirre v. Chula Vista Sanitary Service & Sani–Tainer, Inc.,* 542 F.2d 779, 781 (9th Cir.1976)).

### B. Irreparable Harm/ Balance of Hardships

■ The standard for granting a preliminary injunction requires plaintiff to demonstrate that there is a risk of irrepa-

rable harm or that the balance of the hardships tips in plaintiff's favor. *Preminger*, 422 F.3d at 822–23; *Rodeo Collection*, 812 F.2d at 1217. Plaintiff argues that if defendant is not enjoined from withholding benefits under the Plan, her life will be in danger. Mot. at 4.

Plaintiff notes that she "has had a decade-long struggle with asthma and severe allergic reactions" and that the intravenous treatments of Benadryl and Phenergan have brought relief. Reply at 9. According to her treating physician, Dr. Turullols, plaintiff needs the intravenous drugs daily "because her immune system is compromised, resulting in severe allergic reactions and hospitalization." Reply at 12 (citing Green Decl. at 67). Plaintiff's physician also stated that, since the intravenous treatment began, her hospitalizations have dropped dramatically and she is no longer dependent on steroids. *Id.* (citing Green Decl. at 67).

Plaintiff argues that because the defendant has withheld plaintiff's benefits under the Plan, pharmacies refuse to fill her prescriptions without cash payments. Mot. at 1. Plaintiff notes that she "cannot financially provide these services which amount up to $850 per week," and defendant's denial of health benefits has "forced her to risk her own life." Kantor Dec., Ex. A at 2, 8. Finally, plaintiff asserts that "[w]ithout an immediate resumption of plaintiff's benefits, there is a high likelihood of continued serious detrimental effect." Mot. at 4.

Defendant argues that there is no evidence that plaintiff will be harmed if the medication is not provided. Opp'n at 8.

Defendant asserts that the only evidence indicating that plaintiff needs the intravenous medications are Dr. Turullols' letters dated August 8, 2005 and May 26, 2006 respectively, which defendant argues are "terse, conclusory and unsupported by objective medical evidence." Opp'n at 9–10. Furthermore, defendant argues that there is evidence that plaintiff will actually be harmed if the medications continue to be administered intravenously. Opp'n at 8. In this regard, defendant notes that a previous physician "expressed concern that Bowen's condition was worsening and recommended removal of the Port-a-cath to administer these medications because of repeated infections." Opp'n at 10.

In response, plaintiff contends that defendant has mischaracterized the infections caused by the intravenous line. Reply at 13. Plaintiff states that "[a]lthough an infection with the IV line was noted, two other instances were not caused by the IV line. In one instance, Ms. Bowen required a longer needle and instruction on accessing the line, and in another, an automobile accident caused her seatbelt to impact her IV line, causing irritation." *Id.*

▉ The Court finds that the balance of hardships tips decidedly in the plaintiff's favor. Of particular importance to the Court is that plaintiff does not have the financial resources to pay up to $850 out-of-pocket each week for her intravenous treatment. Without the intravenous treatment, the plaintiff's chances of suffering serious allergic reactions and hospitalization increase. In contrast, the defendant's arguments are not persuasive in light of the early trial date.[1] Therefore, consider-

---

1. Defendant argues that the Plan will "suffer great, and potentially catastrophic, hardship if the injunction is granted in this case." Def.'s Supplemental Br. in Opp'n to Mot. for Prelim. Inj. ("Def.Suppl.Br.") at 2. Defendant notes that it could be required to pay up

to $622,747.39, the remainder of Bowen's lifetime maximum coverage under the Plan, for plaintiff's medications in the time period before trial. Def. Suppl. Br. at 2. Additionally, defendant maintains that plaintiff's treatment is not covered by the Plan, and therefore

ing that plaintiff's health appears to be at risk if the defendant continues to withhold plaintiff's benefits under the Plan, the Court concludes that the risk of irreparable harm to the plaintiff is sufficiently great to permit defendant to withhold benefits under the Plan.

## C. Likelihood of Success on the Merits/ Serious Questions Regarding the Merits

■ The other component of the standard for granting a preliminary injunction requires plaintiff to show either that she will succeed on the merits of the claims in the complaint or that there are serious questions *going to the merits of those* claims. *Preminger,* 422 F.3d at 822–23; *Rodeo Collection,* 812 F.2d at 1217. In light of the Court's conclusion that plaintiff has demonstrated a high risk of irreparable harm if the injunction is denied, the plaintiff's burden to show success on the merits is lessened. *Native Village of Venetie,* 856 F.2d at 1389. Plaintiff need only show that there is a serious question that defendant wrongfully denied coverage under the Plan, which requires the supply to be "medically necessary." Kelly Decl. Ex. 2, App. at 28. A service or supply is "medically necessary" under the Plan if the supply or service:

(1) Is rendered for the treatment or diagnosis of an Injury or Sickness;

(2) Is appropriate for the symptoms, consistent with the diagnosis, and is otherwise in accordance with generally ac-

cepted medical practice and professionally recognized standards;

(3) Is not primarily for the convenience of the Covered Employee or Covered Dependent, a health care provider, or anyone else; and

(4) Is the most appropriate supply or level of service needed to provide safe and adequate care. Kelly Decl. Ex. 2, App. at 25.

Plaintiff asserts that the Plan wrongfully denied plaintiff's claim for medical benefits when the plan knew or should have known that plaintiff was entitled to the benefits. Comp. at 3. Specifically, plaintiff argues that she requires daily intravenous doses of Benadryl and Phenergan to prevent disabling allergic reactions that otherwise result in anaphylactic shock and hospitalizations every four to six weeks. Mot. at 1–2. Plaintiff states that, unless she pays out-of-pocket, she is prevented from receiving proper treatment because defendant has repeatedly denied coverage for the intravenous medications. Mot. at 1, 4. Plaintiff's claim for coverage of the intravenous drugs is supported by a letter from her treating physician, who states, "due to Lupus her immune system is compromised and she would end with severe allergic reactions which in the past made her land in the hospital." Letter from Turullols to Rosenblum of 8/5/05, Mot. Ex. A at 5. Furthermore, plaintiff's physician states that since she began the intravenous therapy,

her hospitalizations dropped dramatically and she feels much better, and she

---

defendant would be "significantly damaged by setting a precedent of paying claims ... that are not covered under the language of the plan." Def. Supp. Br. at 3. Defendant argues that "[i]f the Plan's terms were altered to cover Bowen's claim as she suggests, in the future, to qualify for coverage a participant need only obtain a brief letter from a treating physician stating that ... their chosen treat-

ment ... is necessary to treat their condition." *Id.* Consequently, defendant contends that bankruptcy is foreseeable because "[w]ith approximately 5,000 employees and their dependents, all with $1 million lifetime maximum coverage applying, the Plan could incur virtually limitless liability if forced to pay claims not covered by the Plan." *Id.*

can now live a normal life as a mother and she could eat out in restaurants without the fear of an anaphylactic reactions to some of her foods. She is no longer steroid dependent and has lost 50 pounds after not having to take steroids. *Id.*

Finally, plaintiff notes that the medications were covered by two prior plan administrators, and that the current plan provider, Blue Cross, already authorized and paid for the insertion of plaintiff's port-a-cath access device, which is used solely and expressly for the purpose of administering IV medications. Mot. at 2, and Mot. Ex. A at 8. As such, plaintiff contends that defendant's continued refusal to cover the costs of the intravenous medications is wrongful and arbitrary. Mot. at 3–4.

Defendant maintains that plaintiff's claims were properly denied because "intravenous long-term usage of Phenergan and Benadryl for allergic reactions is not consistent with standard medical therapy and, thus, is not medically necessary." Opp'n at 3 (citing Kelly Decl. at 12, 20 and Ex. 10). Defendant relies on the opinions of three independent medical reviewers who confirmed that the intravenous treatment is not "medically necessary" as required by the Plan. Opp'n at 4; Kelly Decl. Ex. 2, App. at 28. Specifically, defendant's first reviewer advised that "it has to be concluded that the prolonged use of Phenergan and Benadryl is not medically necessary, because failure of the oral version of these medications has not been documented." Opp'n at 4 (citing medical review from Hayes Plus, dated October 6, 2005, included in Ex. 14 to Kelly Decl., App. at 154–55). Defendant's second reviewer stated,

> Intravenous long-term usage of Phenergan and Benadryl for allergic reactions is not consistent with standard medical therapy. Episodes of anaphylaxis are normally treated with epinephrine acutely, and other allergic reactions are commonly treated with oral agents, including antihistamines and, when very severe, steroids. This claimant's indwelling lines have resulted in several serious infections which have necessitated antibiotic treatment and hospitalizations. Thus, it cannot be said that IV Phenergan and IV Benadryl are medically necessary for this patient.

Opp'n at 4 (citing medical review from Hayes Plus, dated November 22, 2005, included in Ex. 10 to Kelly Decl., App. at 140–41).

A third physician advised defendant that plaintiff's prolonged intravenous regimen is unusual even given the complexity of her condition, and that he would also recommend non-allowance of the costs for intravenous administration of the medications. Opp'n at 4 (citing Kelly Decl., Ex. 11). In sum, defendant argues that the intravenous medications are not "medically necessary" as defined by the Plan because (1) long-term intravenous use of the drugs to treat allergic reactions is not standard medical practice, (2) plaintiff did not show that these medications could not be taken orally, and (3) the intravenous lines actually caused further complications for the plaintiff. Opp'n at 8–10. Therefore, according to the defendant, the decision to deny coverage for the intravenous medications was not arbitrary or wrong. Opp'n at 8.

In response, plaintiff contends, "Defendant's emphasis on what is considered acceptable for general allergy symptoms is meaningless here because, as a decade of medical records documents, Ms. Bowen's condition has required repeated attempts with several forms of treatments, from various steroids to 'virtually every anti-asthmatic medication that is known at large....'" Reply at 1 (quoting Green

Decl. at 19). Plaintiff argues that "medical treatment must be appropriate for the symptoms and conditions of the patient. An unusual condition may require an unusual treatment." *Id.* Additionally, plaintiff states that the benefits of the intravenous therapy—reducing hospital visits because of anaphylactic reactions and plaintiff's dependence on steroids—are proven by the medical records. *Id.* Plaintiff's arguments are supported by a letter from plaintiff's treating physician, who wrote, "I realize the uniqueness of her therapy but she is one in a million or more who has to undergo this type of treatment. I realize the costs involved but without these I.V. drugs you would be facing larger hospital bills not to mention the severe harm we would be putting her thr[ough]. At present she is a different person than the one I met in July 23, 2002." Letter from Turullols to Rosenblum of 8/5/05, Mot. Ex. A at 5. Finally, plaintiff's physician notes that she tried oral Benadryl instead of the intravenous route, but that it did not help her. Letter from Turullols to Kantor of 5/26/06, Mot. Ex. B at 3.

■ The Court finds that the plaintiff has met her burden of demonstrating that there is at least a serious question as to whether the defendant improperly denied coverage of the intravenous medications. Plaintiff's medical records and letters from her treating physician evidence that systemic lupus has weakened plaintiff's immune system, and therefore her severe allergic reactions may require treatment beyond what is generally accepted in the medical profession. Additionally, plaintiff's physician, who is apparently the only medical professional who has actually examined plaintiff, notes that she has attempted to take the medications orally, as advocated by defendant's independent medical doctors. However, plaintiff's physician states that the oral medications were not a successful form of treatment; demonstrating that plaintiff may indeed require intravenous treatment.[2]

## D. BOND REQUIREMENT

■ Under Fed. R. Civ. Pro. Rule 65, a preliminary injunction may not be issued unless the proponent posts security in an amount deemed proper by the Court, "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." F.R.C.P. 65(c). District courts have properly disposed of the bond requirement under limited circumstances. See e.g. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir.1987) (stating that "a trial court may, in the exercise of discretion, determine a bond unnecessary ... 'if there is an absence of proof showing a likelihood of harm.'" (internal citations omitted)); *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701 (7th Cir.1977) (granting an exception to the bond requirement where indigence was

---

2. The parties dispute what standard of review is applicable under ERISA when a plan administrator's decision is challenged in court. Defendant argues that under ERISA, the Court should review the administrator's determination for abuse of discretion. Opp'n at 2 (citing *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir.2004)). Plaintiff argues that the denial of benefits should be reviewed de novo by the Court because defendant's delegation to the administrator was merely on paper and not in practice. Reply at 4–5 (citing *Abatie v. Alta Health & Life Ins.*, 458 F.3d 955, 971–72 (9th Cir.2006)). The Court declines to decide at this point which standard of review is applicable to the defendant's decision to deny benefits because even under the more restrictive standard, plaintiff has demonstrated sufficient facts to suggest that the defendant abused its discretion in denying coverage for plaintiff's intravenous drugs.

proven); *Crowley v. Local No. 82*, 679 F.2d 978, 1000 (1st Cir.1982) (stating that "in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant," and secondly, "in order not to restrict a federal right unduly, the impact that a bond requirement would have on the enforcement of the right should also be considered.").

■ Plaintiff argues that the bond requirement should be excused, claiming that plaintiff falls within three recognized exceptions: (1) the moving party is not able to afford the security (*Orantes–Hernandez v. Smith*, 541 F.Supp. 351, 385 n. 42 (C.D. Cal 1982)); (2) the balance of hardships weighs overwhelmingly in the favor of the party seeking the injunction (*Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3rd Cir.1996)); and (3) the moving party demonstrates a strong likelihood of success on the merits (*Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir.1972)). Specifically, plaintiff asserts that "her financial situation is bleak and she and her family cannot afford a bond for the preliminary injunction." Pl.'s Supplemental Br. Regarding Waiver of Bond Requirement ("Pl.Suppl.Br.") at 2. Plaintiff states that she and her husband support themselves and their two children on her husband's salary which pays approximately $2250 net per month plus a yearly bonus, and on plaintiff's Social Security Disability Income in the amount of approximately $1000 per month. Pl. Suppl. Br. at 2; Bowen Decl. at ¶ 5. Plaintiff asserts that she and her husband have had to use the savings invested in her husband's 401(k) plan to pay for her medications. Bowen Decl. at ¶ 5. Additionally, plaintiff contends that she pays in cash for her medicines and that she can only pay for a half of a week supply at once, despite the fact that the pharmacy provides the

medicines to her at cost. Pl. Suppl. Br. at 2. Plaintiff also states that she reuses old supplies to cut down on costs. *Id.* Finally, plaintiff notes that they have no property with which to provide collateral for the bond. Bowen Decl. at ¶ 4.

Defendant argues that it will suffer substantial hardship if the injunction is granted. Def. Suppl. Br. at 5. In particular, defendant notes that potential damages could reach $622,747.39, the remainder of Bowen's lifetime maximum coverage under the Plan. Def. Suppl. Br. at 2. Defendant argues that it will face hardship in recollecting these potential damages because "[a]bsent fraud, a health plan or insurer may not recover from a health care provider payments made to that provider on behalf of a plan participant under the mistaken belief that the patient's treatment was covered under the health plan." Def. Supp. Br. at 5 (citing *City of Hope Nat'l Med. Ctr. v. The Superior Court of Los Angeles County*, 8 Cal.App.4th 633, 10 Cal. Rptr.2d 465 (1992)). Defendant further argues that in cases involving overpayment, the Ninth Circuit has only granted restitution claims where there is fraud or wrongdoing. *Id.* (citing *Trustees on Behalf of Teamsters Benefit Trust v. Doctors Medical Center of Modesto, Inc.*, 286 F.Supp.2d 1234, 1239 (N.D.Cal.2003)). Thus, defendant states that it will not be able to recover payments made pursuant to a preliminary injunction that is improperly issued. *Id.*

Additionally, defendant maintains that plaintiff's treatment is not covered by the Plan, and therefore defendant would be "significantly damaged by setting a precedent of paying claims ... that are not covered under the language of the plan." Def. Supp. Br. at 3. Defendant argues that "[w]ith approximately 5,000 employees and their dependents, all with $1 million lifetime maximum coverage applying, the Plan

could incur virtually limitless liability if forced to pay claims not covered by the Plan." *Id.* Therefore, defendant contends that the balance of hardships do not weigh overwhelmingly in favor of the plaintiff, and as such, a bond should be required to cover the damages the amount that the Plan is required to pay for plaintiff's disputed medical treatment. *Id.* at 5.

In light of plaintiff's showing of hardship and the fact that the Court intends to set an early trial date, the Court excuses the bond requirement. Furthermore, because an expedited trial will be set in this case, the Court finds that the potential damages to the defendant are overwhelmingly outweighed by the hardships that plaintiff would suffer if required to post the bond. Therefore, the Court GRANTS plaintiff's motion to waive the bond requirement.

## IV. CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS plaintiff's motion for preliminary injunction and GRANTS plaintiff's motion to waive the bond requirement.

IT IS SO ORDERED.